LOJESKI, Shirley A., Appellant in 85–1354 and 85–1587

v.

BOANDL, Richard, Revenue Agent; Rosenblum, Larry, Group Manager; Machowski, Theodore J., Reviewer; Beyer, Wayne, Chief, Examination Branch Three; Weiss, Carl, Chief, Quality Review Staff; Hilgen, Robert, Chief, Examination Division; Jessup, George, Revenue Officer; Pfeiffer, Raymond J., Group Manager; West, Jennings L., Chief, Collection Division; Wise, Thomas A., Chief, Criminal Investigation Division; Rideoutte, James T., District Director; Internal Revenue Service, Appellants in 85–1289 and 85–1586.

Nos. 85–1289, 85–1354, 85–1586 and 85–1587.

United States Court of Appeals, Third Circuit.

Argued Feb. 10, 1986.

Decided April 22, 1986.

Rehearing and Rehearing En Banc May 19, 1986.

John R. Crayton (argued), McCarthy and Crayton, Bensalem, Pa., for appellant cross/appellee.

Glenn L. Archer, Jr., Asst. Atty. Gen., Roger M. Olsen, Acting Asst. Atty. Gen., Michael L. Paup, Jonathan S. Cohen, Elaine F. Ferris (argued), Tax Div., Dept. of Justice, Washington, D.C., of counsel, Edward S.G. Dennis, Jr., U.S. Atty., for appellee cross/appellant.

Judah I. Labovitz, Philadelphia, Pa., for amicus curiae American Civil Liberties Foundation in 85–1289 and 85–1354.

Before HIGGINBOTHAM, and STAPLE-TON, Circuit Judges, and TEITELBAUM,* District Judge.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Shirley A. Lojeski brought this action in the United States District Court for the Eastern District of Pennsylvania alleging that Internal Revenue Service ("IRS") Revenue Agent Richard Boandl and Revenue Officer George Jessup had violated her rights under the Fourth and Fifth Amendments to the United States Constitution. Following a bench trial, the district court entered judgment against Boandl and Jessup for compensatory damages and attorney fees. They appeal that judgment. Ms. Lojeski cross-appeals from the district court's refusal to award punitive damages and a greater amount of compensatory damages. We reverse.

## I.

Ms. Lojeski has resided with Thomas Treadway on her Pipersville, Pennsylvania, farm since 1980. In December of 1979, Revenue Agent Boandl commenced the examination of the tax returns of Thomas Treadway for the years 1977 through 1980. In February of 1982, Agent Boandl proposed to Mr. Treadway an adjustment of $247,000.00, including penalties and interest. Mr. Treadway rejected this proposal. Believing that Mr. Treadway had liquidated his real estate holdings and disbursed the proceeds to Ms. Lojeski in order to shield his assets from a tax assessment, Agent Boandl sought and received the permission of his supervisor, Group Manager Larry Rosenblum, to apply a 26 U.S.C. § 6861 (1982) jeopardy assessment and a 26 U.S.C. § 6851 (1982) termination assessment against Mr. Treadway.

Pursuant to these assessments and under the authority of 26 U.S.C. § 6321 (1982), Revenue Officer George Jessup filed a lien against Ms. Lojeski's farm, on or about August 3, 1982. He also levied, under 26 U.S.C. § 6331 (1982), on her bank accounts, which contained over $20,000.00. However, Revenue Officer Jessup failed to obtain the approval of the IRS Regional Counsel, as required by Internal Revenue Manual ¶ 5424.33, before filing notices of lien and levy on the ground of nominee liability.

Pursuant to 26 U.S.C. § 7429(a) (1982), an administrative review of these actions was undertaken. On September 23, 1982, an IRS appeals officer, John Percaccio, concluded that the assessments against Mr. Treadway were not reasonable. Mr. Percaccio recommended abatement of the assessments.

Boandl and Jessup unsuccessfully appealed this decision. On November 30, 1982, the lien on Ms. Lojeski's farm was released and in January of 1983, Ms. Lojeski's bank account funds were returned with interest.

On July 15, 1984, Ms. Lojeski brought this *Bivens* action against appellants alleging violations of her Fifth Amendment procedural due process and Fourth Amendment rights. *See Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). She claimed damages flowing from threats of foreclosure on her farm, a lost opportunity to sell her farm, suspension of her horse breeding operation for lack of operating cash, a suit by a supplier for failure to pay a bill, the borrowing of money for living expenses, a lost

---

* Honorable Hubert I. Teitelbaum, United States District Judge for the Western District of Penn-  sylvania, sitting by designation.

opportunity to purchase health and life insurance policies, humiliation, and "degradation." Ms. Lojeski prevailed on her Fourth Amendment and Fifth Amendment due process claims. Although Ms. Lojeski was denied punitive damages, she was awarded compensatory damages. Thereafter, the district court awarded attorney fees under 26 U.S.C. § 7430 (1982). 626 F.Supp. 530.

## II.

Boandl and Jessup assert that we need not reach the merits of this case. They claim that the district court's recognition of an implied cause of action under *Bivens v. Six Unknown Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is improper because the Congress has provided exclusive statutory causes of action. *See Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Ms. Lojeski, they urge, could have brought civil actions against the United States under 26 U.S.C. § 7426(a) (1982) for wrongful levy on her bank accounts, under 26 U.S.C. § 7426(b) (1982) to enjoin the enforcement of levy, and under 28 U.S.C. § 2410 (1982) to quiet title to her farm. Appellees also assert that they enjoy either absolute immunity under *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), or qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ Boandl and Jessup do not enjoy absolute immunity. This is clear from *Mitchell v. Forsyth*, —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), where the Supreme Court refused to extend absolute immunity to the Attorney General of the United States. The Court held that when the Attorney General performs an investigatory function, he is not absolutely immune because that function is not historically immune, does not subject the Attorney General to "vexacious litigation," and is not restrained by the checks that prevent abuse of legislative and judicial authority. *Id.* 105 S.Ct. at 2813–14.

The same reasoning applies here. There is nothing about the function performed by appellees on behalf of the IRS that is adjudicatory in nature. Therefore, the rationale of *Economou*, that judicial immunity should be extended to executive officials performing adjudicatory functions, does not apply. *See Hicks v. Feeney*, 770 F.2d 375, 379 n. 2 (3rd Cir.1985) ("Both *Harlow* and *Forsyth* teach that absolute immunity is a 'functional immunity,' related to the particular functions performed by the office rather than the broad characterization of the office as executive or ministerial.").

Given our views of the other issues in the case, we need not reach the *Bivens* or qualified immunity issues.

## III.

■ Ms. Lojeski persuaded the district court that she had been deprived of property, that the process due was defined by IRS Manual ¶ 5424.33, which requires the approval of the IRS Regional Counsel before filing notices of lien and levy on the ground of nominee liability, and that she was not accorded this process. The court concluded that she was deprived of property without due process in violation of the Fifth Amendment.

Appellees do not dispute that Ms. Lojeski was deprived of property within the meaning of the Fifth Amendment. Rather, they argue that the IRS Manual establishes only an internal operating procedure, not a constitutional due process standard. The court erred, they say, in equating the internal operating procedure with the constitutional standard of process due Ms. Lojeski.

We agree. This is not "... a case in which the Due Process Clause is implicated because an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *U.S. v. Caceres*, 440 U.S. 741, 752–53, 99 S.Ct. 1465, 1471–72, 59 L.Ed.2d 733 (1979). In *Caceres*, the Supreme Court held that evidence obtained in violation of the IRS Manual was admissible in the criminal trial of a taxpayer accused of bribing

an IRS agent. The agent had transmitted by concealed radio three conversations with the taxpayer. Two of these transmissions violated the IRS Manual's requirement that such monitorings receive prior approval from the Department of Justice.

The taxpayer in *Caceres* urged that the evidence obtained through these monitorings was tainted by the failure to obtain the required approval and should be suppressed. The Supreme Court addressed numerous arguments in support of suppression, including the contention that due process was violated when the IRS Manual's regulations were violated. This argument is virtually identical to Ms. Lojeski's. The Court concluded that due process had not been violated because the taxpayer could not "reasonably contend that he relied on the regulation, or that its breach had any effect on his conduct. He did not know that his conversations with ... [the agent] were being recorded without proper authority." *Caceres*, 440 U.S. at 753, 99 S.Ct. at 1472. In short, the taxpayer's failure to establish detrimental reliance on the IRS Manual's regulations barred a finding of equivalence between a violation of those regulations and a violation of due process.

Like the *Caceres* taxpayer, Ms. Lojeski has failed to show any detrimental reliance on the requirement that the IRS Regional Counsel approve the filing of notices of lien and levy based on nominee liability. Indeed, the factual context of jeopardy assessments and nominee liability, like that of secret monitorings, precludes the possibility of reliance. The similarity between Ms. Lojeski's due process argument and that of the taxpayer in *Caceres* leads us to conclude that *Caceres* is controlling. Accordingly we hold that Ms. Lojeski's procedural due process rights were not violated.

We recognize that a violation by an agency of its own rules can provide a basis for reversal of the agency action. "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rig-

orous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). *See also Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) (dismissal of Foreign Service employee invalid where regulations governing dismissals from Service not followed); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (habeas corpus relief proper where procedure governing processing of deportation suspension application not followed). But this doctrine provides a remedy which Ms. Lojeski has already received: invalidation of the agency action. These cases provide ample guidance to courts asked to reverse "tainted" agency actions, but do not enunciate constitutional principles to take the courts beyond the realm of administrative law. "[B]oth *Service* and *Accardi* ..., upon which *Service* relied, enunciate principles of federal administrative law rather than of constitutional law...." *Bd. of Curators v. Horowitz*, 435 U.S. 78, 92 n. 8, 98 S.Ct. 948, 956 n. 8, 55 L.Ed.2d 124 (1978).

### IV.

■ The district court also held that the imposition of the lien on Ms. Lojeski's farm and the levy on her bank accounts constituted a violation of the Fourth Amendment's guarantee against warrantless seizures. We do not agree for the simple reason that such actions violated no privacy interest.

It is well settled that a warrant is not required for the seizure of real property in satisfaction of a claim of the United States. *G.M. Leasing Corp. v. U.S.*, 429 U.S. 338, 352, 97 S.Ct. 619, 628, 50 L.Ed.2d 530 (1977) (citing *Murray's Lessee v. Hoboken Land & Improv. Co.*, 59 U.S. (18 How.) 272, 15 L.Ed. 372 (1856)). The imposition of the lien against Ms. Lojeski's farm did not, therefore, violate the Fourth Amendment.

Nor did the levy on Ms. Lojeski's bank accounts intrude on her Fourth Amendment privacy interests. In *G.M. Leasing*, the Supreme Court stated:

It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrant-less seizure of property ... situated on private premises to which access is not otherwise available for the seizing officer.

*G.M. Leasing,* 429 U.S. at 354, 97 S.Ct. at 629. There, the Court upheld the seizure by levy of a delinquent taxpayer's assets, including a bank account. *Id.* at 347, 97 S.Ct. at 626. We follow *G.M. Leasing* in holding that the seizures of Ms. Lojeski's property did not violate the Fourth Amendment. *See Cameron v. IRS,* 773 F.2d 126, 128 (7th Cir.1985).

### V.

The district court awarded Ms. Lojeski attorney fees under 26 U.S.C. § 7430 (1982). Since we reverse the court's finding of liability, Ms. Lojeski is no longer the prevailing party. We, therefore, vacate the award of attorney fees.

Accordingly, the district court's judgment and the order awarding counsel fees are reversed. Judgment will be entered for the defendants.