**Marjorie FISHBURN, Plaintiff–Appellant,**

v.

**Edward E. BROWN, United States of America, and Internal Revenue Service, Defendants–Appellees.**

No. 95–3999.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 16, 1996.

Decided Sept. 30, 1997.

Donald E. George (argued and briefed), Akron, OH, for Appellant.

Alice L. Ronk (argued and briefed), U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, Gilbert S. Rothenberg (briefed), for Appellee.

Before: JONES, RYAN, and MOORE, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

## OPINION

This case involves a tax levy and an arrest. Plaintiff, Marjorie Fishburn ("Fishburn"), failed to properly pay her taxes for several years. Thus, Internal Revenue Service ("IRS") agents were forced to seize her property, and in the process they attempted to seize Fishburn's Chevy Blazer. When the agents peacefully attempted to seize Fishburn's Blazer, Fishburn revolted. She decided to take the law into her own hands; she removed the seizure sticker from her Blazer and placed the vehicle in her garage. The IRS agents had no choice but to arrest her. Eventually, the government dismissed the criminal action, but Fishburn was not done. She filed this suit in federal court claiming that the agents unlawfully seized her vehicle and illegally arrested her. The district court granted summary judgment, and while we paint with different colors on the canvas, we now affirm.

## I.

Prior to the events giving rise to this suit, the IRS had been attempting to recover unpaid taxes for several years from Fishburn. In fact, the IRS had filed several liens against Fishburn's half-interest in her house, which she co-owned with her ex-husband, Edward E. Brown ("Brown"). The IRS estimated that Fishburn owed $20,702.94 in tax liability, as of June 1993.

Consequently, on June 16, 1993, IRS officers Judy Spicer ("Spicer") and Deborah Baker ("Baker"), both Defendants in this action, went to Fishburn's residence with the intention of seizing Fishburn's 1988 Chevy Blazer pursuant to 26 U.S.C. § 6331(f).[1] Spi-

cer originally estimated that the Blazer was worth $7,400.00 and that once the IRS took the Blazer into custody it would cost about $800.00 to store, clean, and sell the Blazer. Consequently, the agents believed that the seizure was justified.

Fishburn thought otherwise. Fishburn believed that her equity in the Blazer was at most $300. She claimed that the retail value was $5,600.00, the average wholesale value was $3,800, and she owed GMAC $5,312.70 in remaining payments.

When Spicer and Baker arrived at Fishburn's residence, they identified themselves and requested that Fishburn pay her tax liabilities. Fishburn declined to pay, and the agents informed her that if she was not willing to pay they were going to have to seize her residence and Blazer. Consequently, the agents handed her seizure papers and attached a seizure sticker to her vehicle. Fishburn became angry, tore the seizure sticker off her vehicle, and drove it into the garage. She also refused to take the seizure papers. The agents informed Fishburn that her actions constituted a criminal offense, but did not immediately arrest her. Instead, Baker contacted the Criminal Investigation Division, which, in turn, sent Special Agents George Camilletti ("Camilletti") and David Marzich ("Marzich") to meet Baker and Spicer at the scene.[2]

Two days later, on June 18, 1993, Camilletti swore to an affidavit regarding these events and obtained a warrant for Fishburn's arrest. Camilletti and Marzich then arrested Fishburn for forcibly rescuing her property in violation of 18 U.S.C. § 2233.[3] A grand jury eventually indicted Fishburn, but the government dismissed the case shortly before trial and returned the Blazer to Fishburn.

---

1. Section 6331(f) provides:
   No levy may be made on any property if the amount of the expenses which the Secretary estimates (at the time of levy) would be incurred by the Secretary with respect to the levy and sale of such property exceeds the fair market value of such property at the time of the levy.

2. Camilletti and Marzich are also named Defendants in Fishburn's complaint.

3. Section 2233 provides:

   Whoever forcibly rescues, dispossesses, or attempts to rescue or dispossess any property, articles, or objects after the same shall have been taken, detained, or seized by any officer or other person under the authority of any revenue law of the United States, or by any person authorized to make searches and seizures, shall be fined not more than $2,000 or imprisoned not more than two years, or both. 18 U.S.C. § 2233.

While Fishburn does not appear to contest these facts, she claims that Spicer seized the Blazer "just to hurt" Fishburn and that Spicer and Baker's actions were "designed to anger [Fishburn] and to get her to" commit the rescue for which she was arrested.

Consequently, on May 31, 1994, Fishburn filed a four-count complaint in the Court of Common Pleas in Wayne County, Ohio. Count One, sought to quiet title of real property that was held jointly by Fishburn and her former husband, Edward Brown. Count Two challenged the procedural validity of the liens the government attached to Fishburn's real property. Counts Three and Four sought damages from the four individual IRS agents for the seizure of the Blazer (Count Three) and her ensuing arrest (Count Four).

The United States then removed this action to the United States District Court for the Northern District of Ohio pursuant to 28 U.S.C. §§ 1441, 1442, and 1444. Once in federal court, the United States substituted itself for its four agents pursuant to 28 U.S.C. § 2679(d)(1) (provision of the Federal Torts Claim Act, 28 U.S.C. §§ 1346(b), 2671 to 2680), which provides that the Attorney General may substitute the United States for an employee if the Attorney General certifies that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Id.* Fishburn never objected to this substitution.

The United States then argued, and now contends on appeal, that the district court had jurisdiction over Count Two of the complaint under 28 U.S.C. § 2410, but lacked subject matter jurisdiction over Fishburn's damages claims in Counts Three and Four. On August 8, 1995, the district court granted the United States's motion for summary judgment and dismissed without prejudice the action to quiet title. Fishburn appealed the district court's order of summary judgment in favor of the United States, but has not appealed the dismissal of the claim involving Brown or the subject matter jurisdiction finding below as to Count Two.

## II.

This court reviews a district court's decision to grant summary judgment *de novo. Rowley v. United States,* 76 F.3d 796, 799 (6th Cir.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### A. Subject Matter Jurisdiction

We must first determine whether the district court had subject matter jurisdiction over Counts Three and Four of the complaint, because absent subject matter jurisdiction the court has no authority to rule on the merits of these claims. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (holding that a motion to dismiss may only be decided once the court establishes subject matter jurisdiction over the claims); *Moir v. Greater Cleveland Regional Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990) (same). The United States argues that the district court should never have addressed Counts Three and Four, the damages claims, because it did not have subject matter jurisdiction over the claims. While it is not easy to glean from Fishburn's complaint whether she is claiming that this is a *Bivens* action, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), or one under the Federal Tort Claims Act (FTCA), for the purposes of this decision we will assume she is bringing both claims.

#### 1. FTCA Claims

The United States is amenable to suit only insofar as it has consented to be sued. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). The waiver of the United States immunity is strictly construed, *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969), and "cannot be avoided simply by naming officers and employees of the United States as defendants." *Ecclesias-*

*tical Order of the Ism of Am v. Chasin,* 845 F.2d 113, 115 (6th Cir.1988).

■ Under the FTCA the United States has waived its immunity with respect to certain actions. "Actions connected with the assessment or collection of taxes, however— as this action is—are expressly excluded from the waiver." *Id.*(citing 28 U.S.C. § 2680(c) (which states: "The provisions of this chapter ... shall not apply to ... [a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any ... law-enforcement officer.")). Additionally, a person must exhaust administrative remedies prior to bringing a claim under the FTCA. 28 U.S.C. § 2675(a).

■ In 1988, Congress added a series of provisions known as the "Taxpayer Bill of Rights," which allows some civil suits against the United States for certain IRS activities. *See* Pub.L. 100–647, tit. VI, § 6241(a), 102 Stat. 3747 (1988). In this case, the "Taxpayer Bill of Rights" provides in pertinent part:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title ... such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7433(a). A prerequisite to bringing such a claim, however, is exhaustion of administrative remedies. 26 U.S.C. § 7433(d)(1). The Plaintiff never exhausted her administrative remedies nor does she allege that she has done so. Consequently, the district court never had jurisdiction over the FTCA claims against the United States and should have dismissed them for lack of subject matter jurisdiction.

## 2. The *Bivens* Claims

■ Fishburn has insisted throughout this litigation that she was also suing the agents individually and somewhat vaguely has referred to a violation of her constitutional rights. In her complaint she did refer to "the loss of her constitutional rights to due process of law." Complaint, 94CV1332, filed May 31, 1994, at ¶ 23; Joint Appendix at 60. Consequently, Fishburn appears to be making a Fifth Amendment claim.[4] The district court was equally bewildered by her complaint, but the district court gave Fishburn the benefit of the doubt and analyzed her claims under Counts Three and Four as *Bivens* claims against the agents.

The exclusivity of remedy provided under the FTCA does not apply to a *Bivens* action. 28 U.S.C. § 2679(b)(2)(A); *Carlson v. Green,* 446 U.S. 14, 19–20, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980) (stating that the legislative history of the 1974 amendments to the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action"). However, "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies." *Schweiker v. Chilicky,* 487 U.S. 412, 423, 108 S.Ct. 2460, 2468, 101 L.Ed.2d 370 (1988).

In this case, as we noted above, Congress has provided a damages remedy for the reckless or intentional disregard of Internal Revenue Code provisions by IRS employees in collecting taxes. *See* 26 U.S.C. § 7433. Furthermore, Congress unequivocally stated that § 7433 is "the exclusive remedy for recovering damages resulting from such actions." 26 U.S.C. § 7433(a). This provision does not mention constitutional violations; however, several other circuits have concluded that § 7433 precludes *Bivens* actions

---

**4.** In construing Fishburn's claim as a constitutional claim, we are not saying that the actions of the agents rose to the level of a possible constitutional violation. In fact, quite the opposite is true. Based on the facts before us, we believe that the agents were courteous and gave Ms. Fishburn every opportunity to comply with the law. Either way, we agree with the Seventh

Circuit that "more must be shown than a lack of courtesy, accuracy, and restraint by internal revenue agents ... [n]ot every interference with peace of mind is a deprivation of liberty within the meaning of the Constitution." *Cameron v. Internal Revenue Serv.,* 773 F.2d 126, 129 (7th Cir.1985).

against IRS agents for due process violations. *See Vennes v. An Unknown Number of Unidentified Agents,* 26 F.3d 1448, 1454 (8th Cir.1994) ("[Sections] 7432 and 7433 have authorized taxpayer actions against the United States to recover limited damages resulting from specific types of misconduct by IRS employees. These carefully crafted legislative remedies confirm that, in the politically sensitive realm of taxation, Congress's refusal to permit unrestricted damage actions by taxpayers has not been inadvertent."); *McMillen v. United States Dep't of Treasury,* 960 F.2d 187, 190 (1st Cir.1991) (per curiam) ("Even if the behavior described in the complaint did constitute some sort of constitutional violation ... we doubt that the creation of a *Bivens* remedy would be an appropriate response. 'Congress has given taxpayers all sorts of rights against an overzealous officialdom.'") (quoting *Cameron v. Internal Revenue Serv.,* 773 F.2d 126, 129 (7th Cir.1985)); *Wages v. Internal Revenue* Service, 915 F.2d 1230, 1235 (9th Cir.1990) (holding that remedies provided by Congress foreclose a *Bivens* action for due process violations); *National Commodity and Barter Ass'n v. Gibbs,* 886 F.2d 1240, 1248 (10th Cir.1989) ("Although there may be no established mechanism for the recovery of damages against federal authorities for unconstitutional conduct, the unavailability of complete relief does not mandate the creation of a *Bivens* remedy when other 'meaningful safeguards or remedies for the rights of persons situated as [were the plaintiffs] are available.'") (quoting *Schweiker,* 487 U.S. at 425, 108 S.Ct. at 2468); *see also Fritz v. Hannon,* No. 93–2147, 1994 WL 174145, at *1 (7th Cir. May 5, 1994) (order) (holding that plaintiff, whose car was seized by the IRS, had adequate statutory procedures to challenge the seizure of his automobile, and thus, the plaintiff was precluded from bringing a *Bivens* action for damages). Simply put, this is not a case where the plaintiff did not have access to judicial review. Whether the plaintiff is claiming a procedural or substantive due process violation, she had adequate levels of review to bring her allegations. Consequently, a *Bivens* action is not viable. The Supreme Court has repeatedly held

that where internal revenue collection is at issue, a meaningful post-deprivation remedy will satisfy the Due Process Clause. *Bob Jones Univ. v. Simon,* 416 U.S. 725, 747, 94 S.Ct. 2038, 2051, 40 L.Ed.2d 496 (1974) ("And although the congressional restriction to postenforcement review may place an organization claiming tax-exempt status in a precarious financial position, the problems presented do not rise to the level of constitutional infirmities, in light of the powerful government interests in protecting the administration of the tax system from premature judicial interference....").

Since Congress has created statutory provisions that enabled Fishburn to challenge the IRS agents' actions, she does not have an actionable *Bivens* claim for a violation of due process. Consequently, the district court never had jurisdiction over Counts Three and Four, and thus, these counts should have been dismissed for lack of subject matter jurisdiction.

While we differ in reasoning from the district court, we agree that this case should be dismissed. The judgment of the district court is **AFFIRMED**.