

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-31-2000

# Shreiber v. Mastrogiovanni

Precedential or Non-Precedential:

Docket 99-5230

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Shreiber v. Mastrogiovanni" (2000). *2000 Decisions.* Paper 115.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/115

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 31, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5230

GERALD B. SHREIBER

v.

ROBERT A. MASTROGIOVANNI;
THE INTERNAL REVENUE SERVICE

GERALD B. SHREIBER,
       Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 98-cv-02515)
District Judge: Honorable Joseph E. Irenas

Argued December 9, 1999

Before: NYGAARD, RENDELL, and ROSENN,
Circuit Judges

(Filed: May 31, 2000)

      David N. Zeehandelaar, Esq.
       (ARGUED)
      Blank, Rome, Comisky & McCauley
      One Logan Square
      Philadelphia, PA 19103
       Counsel for Appellant

          Kenneth Rosenberg, Esq. (ARGUED)
          David I. Pincus, Esq.
          U.S. Department of Justice,
           Tax Division
          P.O. Box 502
          Washington, DC 20044
           Counsel for Appellees

OPINION OF THE COURT

RENDELL, Circuit Judge.

In this appeal we are called upon to decide whether a
federal cause of action should be implied to permit a
plaintiff to sue an employee of the Internal Revenue Service
("IRS") for damages resulting from a constitutional violation
claimed to have occurred in connection with the
assessment of a tax liability.[1] We will affirm the order of the
District Court dismissing Shreiber's complaint for failure to
state a claim. In so doing, we join a number of other courts
of appeals holding that a damages remedy should not be
inferred against an IRS agent pursuant to Bivens v. Six
Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), for
alleged constitutional violations, because Congress has
created an extensive scheme providing remedies to a
plaintiff complaining of the conduct of government officials
in connection with tax assessments and collections.

In 1995 and 1996, IRS agent Mastrogiovanni conducted
_____

1. We have previously affirmed, without precedential effect, at least
three
district court rulings which have explained that a Bivens remedy should
not be inferred for allegations of unconstitutional actions by IRS agents.
See Barnard v. Pavlish, No. 97-CV-0236, 1998 WL 247768, at *8-9 (M.D.
Pa. Mar. 30, 1998), aff 'd, 187 F.3d 625 (3d Cir. 1999) (table)
(unpublished) (per curiam); Upper v. United States Gov't, No. 93-3596
(JHR), 1994 WL 660738, at *3 (D.N.J. Aug. 11, 1994), aff 'd, 74 F.3d
1229 (3d Cir. 1995) (table) (judgment order); Schiff v. Balas, Civ. A. No.
90-2007, 1991 WL 330204, at *2 (W.D. Pa. Oct. 2, 1991), aff 'd, 961
F.2d 1568 (3d Cir. 1992) (table) (judgment order). We noted, but did not
decide, a similar issue in Lojeski v. Boandl, 788 F.2d 196, 198 (3d Cir.
1986).

2

an audit of the federal income tax liabilities of Shreiber and his wife for the 1991, 1992 and 1993 tax years. During the investigation, Shreiber spoke with Mastrogiovanni on several occasions and became familiar with

Mastrogiovanni's voice. Shreiber alleges that on August 11, 1995, Mastrogiovanni left a voice mail message at his place of business stating in part: "Hey you Jew bastard piece of shit. This is White Trash, I am going to get you." Thereafter, when the audit was completed, the IRS sent a "30-day letter" to the Shreibers, dated May 31, 1996, proposing large increases in their tax liabilities for the years 1991, 1992 and 1993. The letter was prepared by J. J. Jennings, District Director, on the basis of Mastrogiovanni's recommendation.

Shreiber filed a timely protest of the adjustment with the IRS, and proceeded to contest it through administrative channels. It appears that he reached a tentative settlement with the IRS in June of 1999, in which the IRS agreed to reduce the amount of deductions it would deny and agreed to an adjusted amount due.

On May 29, 1998, while the administrative appeal was pending, Shreiber filed a civil rights action against Mastrogiovanni and the IRS. Shreiber's complaint alleges that he was "denied his constitutional right to a fair hearing due to the religious discrimination of the IRS agent," evidenced by the voice mail message, and "deprived of property without due process of law, in violation of his Fifth Amendment rights." In his appellate briefs, Shreiber extends his complaint to encompass an equal protection violation based on religion and grounded in the Fifth Amendment. He requests damages compensating him for his attorney's fees and mental anguish as well as punitive damages. The government filed a motion for summary judgment, which the District Court actually treated as a motion to dismiss.

The District Court dismissed the complaint on two grounds. First, the District Court determined that Shreiber could not state a claim upon which relief could be granted. The District Court explained that Shreiber had conceded that 26 U.S.C. S 7433 was limited to redressing violations of the Internal Revenue Code and, thus, did not provide him

3

with a cause of action. The Court then considered whether a Bivens remedy should be inferred. Reviewing the Supreme Court's decision in Bivens, and its progeny, including Schweiker v. Chilicky, 487 U.S. 412 (1988), the Court concluded that a cause of action should not be inferred because Congress had enacted 26 U.S.C. S 7433 and had provided a complex structure permitting the challenge of tax assessments through other means. The Court also concluded that even if a cause of action should be inferred, the claim should be dismissed as premature because it would not accrue until it was determined that the assessment had, in fact, been incorrect.2

Shreiber contends that we should infer a cause of action under Bivens precisely because Congress did not provide one when it enacted 26 U.S.C. S 7433, and because, without a federal damages action, he will be without a meaningful remedy in the form of compensatory and punitive damages and unconstitutional behavior will not be deterred. At oral argument, Shreiber emphasized that his case should be distinguished from Schweiker and the other tax cases resolved in the government's favor by other courts because he is contending that his constitutional rights were violated on the basis of religious animus.

An understanding of the applicable statutes and their history is important to understanding this appeal. In 1988, as part of the "Taxpayer Bill of Rights," Congress enacted 26 U.S.C. S 7433, providing for a federal cause of action against an officer or employee of the IRS for actions in violation of the Internal Revenue Code or regulations "in connection with any collection of Federal tax." 26 U.S.C. S 7433(a).3 As enacted,S 7433(a) is the "exclusive remedy

_____

2. The government does not rely upon this ground of dismissal on appeal. The government does argue that Shreiber failed to allege a cognizable constitutional violation, and that Mastrogiovanni is entitled to
qualified immunity. In light of our disposition, we need not discuss these points.

3. The statute currently states in full:

        (a) In general. If, in connection with any collection of Federal tax
with respect to a taxpayer, any officer or employee of the Internal

4

for recovering damages resulting from such actions." Id. A proposed draft of the provision contained broader language. The draft permitted civil actions "in connection with any determination or collection of federal tax" and in violation of "any provisions of federal law." S. 2223, 100th Cong., 2d Sess. S 123 (1988) (emphasis added). The Conference Report regarding S 7433 discusses two modifications from the Senate draft that are relevant to the issue before us. The Report explains that the final version was:

> limited to reckless or intentional disregard in connection with the collection of tax. An action under this provision may not be based on alleged reckless or intentional disregard in connection with the determination of tax. . . . [T]he provision is limited to reckless or intentional disregard of the Internal Revenue Code and the regulations thereunder. An action may not be brought under this provision based on an alleged violation of a Federal law other than the Internal Revenue Code or a regulation promulgated thereunder.

H.R. Conf. Rep. No. 100-1104, at 229 (1988), reprinted in 1988-3 C.B. 473-479;4 see also Miller v. United States, 66 F.3d 220, 222-23 (9th Cir. 1995) (discussing the legislative history of S 7433 and finding that it does not permit actions for the incorrect determinations of tax liability); Shaw v. United States, 20 F.3d 182, 184 (5th Cir. 1994).

_____

> Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

26 U.S.C. S 7433(a).

4. Since its enactment in 1988, Congress has amended S 7433. For instance, in 1998, Congress amended the provision to permit suits based upon allegations of negligence in the collection of taxes. See Pub. L. No. 105-206, Sec. 3102(a), (c).

5

Even though S 7433 was narrowed in scope during the drafting process, Congress has provided other methods by which a taxpayer can challenge an assessment. See 26 C.F.R. S 601.103(c) (explaining options available to a taxpayer). A taxpayer may pursue an internal appeal with the IRS, see 26 C.F.R. S 106, sue for a refund in federal court, see 28 U.S.C. S 1346(a)(1), 26 U.S.C. SS 6511, 7422, or appeal the assessment to the Tax Court, see 26 U.S.C. SS 6213, 6214. Attorney's fees may be recovered in certain circumstances when the taxpayer is successful. See 26 U.S.C. S 7430. As noted, Shreiber utilized the administrative appeals process.

In determining whether Shreiber's claim can be asserted against Mastrogiovanni in a civil rights action, we must consult the relevant precedent beginning with the seminal case of Bivens v. Six Unknown Federal Narcotics Agents. In Bivens, the Supreme Court held that an individual complaining of a Fourth Amendment violation by federal officers acting under color of their authority may bring a suit for money damages against the officers in federal court. See Bivens, 403 U.S. at 397. In so holding, the Court noted in dicta that "[t]he present case involves no special factors counseling hesitation in the absence of affirmative action by Congress," and found "no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." Id. at 396-97.

Following Bivens, the Supreme Court has considered the availability of damages remedies under Bivens in a number of factual settings, and addressed the meaning of "special factors counseling hesitation."5 The Court's decision in

_____

5. See Schweiker, 487 U.S. 412 (1988); Chappell v. Wallace, 462 U.S. 296, 304 (1983) (finding that "the unique disciplinary structure of the Military Establishment and Congress' activity in thefield constitute `special factors' which dictate that it would be inappropriate to provide enlisted military personnel a Bivens-type remedy against their superior officers"); United States v. Stanley, 483 U.S. 669, 683-84 (1987) (holding that Chappell v. Wallace extends to deny Bivens actions "for injuries that

6

Schweiker is particularly relevant to our discussion here. In Schweiker, the Supreme Court considered whether a damages remedy should be implied under Bivens for alleged due process violations in connection with the denial of Social Security benefits. See Schweiker, 487 U.S. at 420. The plaintiffs in Schweiker were three recipients of Social Security benefits who had been dropped from the rolls after the defendants adopted policies that the plaintiffs alleged violated their due process rights. Each plaintiff had either successfully appealed the determination or applied for reinstatement, and had either received full retroactive benefits or had an application for benefits pending. Each plaintiff, then, sued for additional damages not available through the congressionally provided measures.

The Supreme Court held that no Bivens remedy should be implied. Reviewing the teachings of applicable precedent, the Court reaffirmed that the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation. See id. at 421–22. The Court also referenced the importance of considering Congress's activities in the area in question even if the remedies provided did not afford complete relief. See id. at 423–24 (citing Bush v. Lucas, 462 U.S. 367, 368 (1983)). The Court explained:

> In sum, the concept of "special factors counseling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial

_____

`arise out of or are in the course of activity incident to [military] service' "); Bush v. Lucas, 462 U.S. 367, 368 (1983) (refusing to create a non-statutory damages remedy for a federal employee whose First Amendment right to free speech was violated by a superior); Carlson v. Green, 446 U.S. 14, 19 (1980) (permitting a suit for damages directly under the Eighth Amendment's proscription against cruel and unusual punishment); Davis v. Passman, 442 U.S. 228, 248–49 (1979) (implying a damages remedy directly under the Due Process Clause of the Fifth Amendment against a United States Congressman who allegedly fired the plaintiff because of her sex); see also FDIC v. Meyer, 510 U.S. 471, 474 (1994) (refusing to imply a Bivens remedy directly against a federal agency).

7

> deference to indications that congressional inaction has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies.

Id. at 423.

Proceeding to discuss the merits of the appeal, the Court noted that the remedial structure did not provide the plaintiffs with the "complete relief " that would be available by way of a Bivens suit, see id. at 424–25, 426–27, but confirmed that this did not require the creation of a Bivens remedy, see id. at 424–25 (discussing Bush v. Lucas). The Court explained that Congress "ha[d] not failed to provide meaningful safeguards or remedies," and deferred to Congress's competence at balancing issues of governmental efficiency and individual rights. See id. at 425, 429. The Court also rejected the argument that a Bivens action should be inferred in order to provide separate remedies for those individuals who lost their benefits because of a constitutional violation rather than a non–constitutional violation. See id. at 426–27.

Applying these considerations to the case at hand, we agree with the District Court that a Bivens action should not be inferred to permit suits against IRS agents accused of violating a taxpayer's constitutional rights in the course of making a tax assessment. Rather than supporting Shreiber's argument, the legislative history of 26 U.S.C. S 7433(a) indicates that Congress did not inadvertently fail to codify a cause of action for assessment conduct; rather, Congress deleted "determinations" –– which would have included assessments –– in passing the statutory provision. Moreover, Congress modified what was in draft form a remedy for violations of "federal law" and enacted instead a remedy for violations only of the IRS code and regulations. Congress chose to provide certain remedies, and not others, as part of the complex statutory scheme which regulates the relationship between the IRS and taxpayers. We will not create a remedy where Congress has chosen not to.

8

Although Shreiber correctly argues that without a Bivens action he cannot recover completely, Schweiker explains that where Congress has provided meaningful remedies we should exercise extreme caution in creating additional relief. As with the administration of welfare benefits, the organization of the tax system, and the balancing of governmental efficiency and individual rights, is best left to Congress. See id. at 429 ("Whether or not we believe that its response was the best response, Congress is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program.").

We also believe Shreiber's deterrence argument is similarly misplaced. Although deterrence is one of the aims of a Bivens action, see FDIC v. Meyer , 510 U.S. 471, 485 (1995) (citing Carlson v. Green, 446 U.S. 14, 21 (1980)), we, again, should defer to Congress in this regard. Also, this case is distinguishable from Bagola v. Kindt, 131 F.3d 632 (7th Cir. 1997), relied upon by Shreiber for his argument regarding deterrence. In Bagola, the Court of Appeals for the Seventh Circuit permitted a prison inmate to bring a Bivens action complaining of a violation of his Eighth Amendment rights based on deliberate indifference to his safety in a prison factory. Notwithstanding the existence of the remedy provided by 18 U.S.C. S 4126 and the teachings of Schweiker and Bush v. Lucas, the Court found that the limited nature of the remedy and the absence of deterrent effect suggested that Congress had not intended the statutory remedy to preclude a Bivens action. See id. at 642–45.6 The Court's analysis was guided by the consideration of deterrence in Carlson v. Green , 446 U.S. 14, 19 (1980), in which the Supreme Court permitted a Bivens action under the Eighth Amendment despite the

_____

6. Under the applicable statute and regulations, Bagola received compensation for his lost wages. See id. at 634. In addition, within forty–
five days of his release from prison, he could apply for compensation for his injury in a no–fault proceeding. See id. at 634, 634 n.2. The Seventh Circuit found the remedy to be lacking in deterrent value because of the potentially long delay and the possibility that the defendants' alleged conduct would not be relevant to the claim evaluation process. See id. at 644.

remedy provided by the Federal Tort Claims Act, as well as the particular context of prisoner litigation. See id. at 638–40, 642–45. Due to the differences in the remedial scheme as well as the legislative backdrop of the statute we are examining, Bagola does not inform our analysis.

We note that our holding in this case is supported by the decisions of a number of other Courts of Appeals that have concluded that a Bivens action should not be inferred against IRS agents. See Fishburn v. Brown, 125 F.3d 979, 982–83 (6th Cir. 1997) (refusing to permit a Bivens action against IRS agents for seizure of property allegedly in violation of the Fifth Amendment); National Commodity & Barter Assoc. v. Archer, 31 F.3d 1521, 1532 (10th Cir. 1994) (finding no Bivens action for jeopardy assessments allegedly in violation of the First and Fourth Amendments); Vennes v. Unknown Number of Unidentified Agents , 26 F.3d 1448, 1453-54 (8th Cir. 1994) (denying a Bivens  action alleging numerous constitutional violations leading to illegal tax assessments and collections); McMillen v. United States, 960 F.2d 187, 190–91 (1st Cir. 1991) (dicta) (per curiam) (finding it unlikely that a Bivens action would exist to dispute tax liability or demand the lifting of a lien); Wages v. United States, 915 F.2d 1230, 1235 (9th Cir. 1990) (dicta) (finding that it would be futile for the plaintiff to amend her pleadings in part because a Bivens action would not lie for the constitutionally impermissible collection of taxes); Cameron v. IRS, 773 F.2d 126, 129–30 (7th Cir. 1985) (considering the issue before S 7433). Although none of these cases explicitly consider the drafting of 26 U.S.C. S 7433 in their analysis, and some involve collection actions rather than tax determinations, many rely explicitly upon Schweiker to conclude that the Bivens action against IRS employees is foreclosed by the existence of comprehensive statutory remedies. See Fishburn, 125 F.3d at 982; National Commodity & Barter Assoc., 31 F.3d at 1532; Vennes, 26 F.3d at 1453; McMillen, 960 F.2d at 190–91.

Shreiber also argues that this case should be distinguished from Schweiker, and the other decisions cited above, because it involves religious animus. However, Shreiber's pleading complains essentially of a denial of a fair hearing which resulted in the wrongful assessment of

his tax, and of the proximate effects of the IRS agent's actions. He does not contend that his right to religious freedom was implicated; rather, he cites the evidence of religious animus in support of his allegations that he was denied his Fifth Amendment right to due process and equal protection.7 As he explained during oral argument, he would, however, have us hold that the type of unconstitutional act that leads to the incorrect assessment can alter the analysis of whether a Bivens action should be inferred. We do not find this argument convincing. Our focus at this time is not on the nature of the constitutional violation that led to the allegedly incorrect assessment -- which the plaintiff must prove on the merits and we assume at this time -- but whether it is appropriate to create a damages action to remedy the wrong in light of what Congress has done. See Schweiker, 487 U.S. at 427; Bush, 462 U.S. at 381 (considering "what legal remedies are available to him"); Davis v. Passman, 442 U.S. at 245 (separating the potential violation of the constitutional right from the question "whether a damages remedy is an appropriate form of relief "). The complaint focuses on assessment activities asserted to be in violation of Shreiber's civil rights, and, regardless of the type of illegal motivation or the particulars of the violation, Congress has established a statutory scheme providing remedies for incorrect assessments. Our analysis focusing on the remedy, rather than the wrong, is consistent with the analysis used by the Supreme Court in Bush v. Lucas and endorsed in Schweiker, and also applied by the Court of Appeals for the Tenth Circuit in National Commodity &

---

7. We note that portions of Shreiber's complaint allege injuries caused in part by the comments left on his voice mail. However, Shreiber candidly states in his brief that he "does not contend that the telephone message left by the IRS agent Mastrogiovanni was the violation of Appellant's constitutional rights, but instead is evidence of the agent's religious discrimination against Appellant." Appellant's Br. at 8. Even if Shreiber had alleged the comments as a separate cause of action, the comments would not necessarily establish a constitutional violation. See, e.g., Emmons v. Mclaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (holding that a police officer's threat did not constitute a constitutional violation actionable under 42 U.S.C. S 1983); see also McMillen, 960 F.2d at 190; Cameron, 773 F.2d at 128-29.

Barter Association v. Archer. However, our focus on the remedy at this stage should not be construed as condoning the alleged wrong.

Bush v. Lucas is particularly relevant to this aspect of Shreiber's argument. In Bush, the Supreme Court held that a Bivens action should not be inferred to permit federal employees to sue their supervisors for alleged violations of their First Amendment rights "[b]ecause such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." Bush, 462 U.S. at 368. Although the Court presumed that the plaintiff 's First Amendment rights had been violated, see id. at 372, the Court explained: "The ultimate question on the merits in this case may appropriately be characterized as one of `federal personnel policy.' When a federal civil servant is the victim of a retaliatory demotion or discharge because he has exercised his First Amendment rights, what legal remedies are available to him?" Id. at 380–81.

In Schweiker, the plaintiffs argued that a Bivens action should be inferred to provide them with additional remedies because they had been denied benefits for constitutional reasons. See Schweiker, 487 U.S. at 427. The Court, however, explained that Bush "drew no distinction between compensation for a `constitutional wrong' and the restoration of statutory rights that had been unconstitutionally taken away," and concluded that "[i]n light of the comprehensive statutory schemes involved [in Schweiker and Bush], the harm resulting from the alleged constitutional violation can in neither case be separated from the harm resulting from the denial of the statutory right." Id. at 427–28. Further, in a case dealing with a suit against IRS agents alleging wrongful "jeopardy" assessments, the Court of Appeals for the Tenth Circuit found no distinction between a Bivens action based on violations of the plaintiff 's First or Fourth Amendment rights, as compared to one based on alleged violations of the plaintiff 's due process rights under the Fifth Amendment. See National Commodity & Barter Assoc., 31 F.3d at 1532. The Court found that a Bivens action should

12

not be inferred for any of the claims because the remedies for the wrongful jeopardy assessment were afforded by statute. See id. ("This reasoning [denying a Bivens action for a violation of the Fifth Amendment] is equally applicable to the claim grounded on allegations of wrongful jeopardy assessments here under the First and Fourth Amendments. In light of the remedies afforded elsewhere, we decline to recognize a First or Fourth Amendment Bivens remedy based on the allegations of wrongful jeopardy assessments made by the instant complaint . . . .").

In sum, Shreiber asks us to infer a federal damages remedy under Bivens for violation of his Fifth Amendment protections of due process and equal protection by an IRS agent charged with auditing his tax returns. We decline to do so because we believe that Congress's efforts to govern the relationship between the taxpayer and the taxman indicate that Congress has provided what it considers to be adequate remedial mechanisms for wrongs that may occur in the course of this relationship. See Schweiker, 487 U.S. at 424. The fact that Shreiber's complaint seeks damages not otherwise provided for in the legislative scheme and alleges wrongful religious animus does not alter our analysis.

For the reasons stated above, we will affirm.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit