### NORFOLK SOUTHERN CORPORATION AND AFFILIATED COMPANIES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT *

Docket Nos. 19305–91, 19306–91.          Filed April 6, 1995.

*Newman T. Halvorson, Jr., Sean F. Foley, Frederick A. Richman, Andrew J. Frackman, Joseph G. Giannola, Richard Alan Brady,* and *William M. Paul,* for petitioners.

*Phillip A. Pillar, John A. Guarnieri, Stephen M. Miller,* and *Keith L. Gorman,* for respondent.

## SUPPLEMENTAL OPINION

PARR, *Judge:* The Court's opinion in these cases, 104 T.C. 13 (1995), was issued on January 11, 1995 (prior opinion). Thereafter, on February 13, 1995, pursuant to Rule 161,[1] respondent filed a motion for reconsideration of opinion. The Court directed petitioners to file a response to respondent's motion. On March 6, 1995, petitioners filed their objection to respondent's motion for reconsideration.

---

*This opinion supplements our opinion in *Norfolk S. Corp. v. Commissioner,* 104 T.C. 13 (1995).

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years at issue, unless otherwise indicated.

*Background*

During 1981, petitioners entered into an agreement with Flexi-Van Leasing, Inc. (Flexi-Van), a large lessor of intermodal cargo containers, intended to qualify as a safe harbor lease under section 168(f)(8) (safe harbor lease).[2] Under that agreement, petitioners agreed to pay Flexi-Van $18,032,147 for all rights to claim investment tax credit (ITC) and accelerated depreciation deductions relating to, among other equipment, approximately 38,000 intermodal cargo containers (containers) that Flexi-Van leased in the course of its business to more than 675 shipping companies based throughout the world. See *Norfolk S. Corp. v. Commissioner, supra* at 20–21, 22. In notices of deficiency issued for the years 1981 through 1985, respondent determined that petitioners were not entitled to claim ITC and accelerated depreciation for the containers on the ground that the safe harbor lease did not qualify under section 168(f)(8), because petitioners had not shown that the containers qualified as eligible property for 1981. *Id.* at 24.

For 1981, section 38 provides a credit against tax for qualifying tangible property used in a trade or business or held for the production of income and having a useful life of 3 years or more at the time the property is placed in service, but only if depreciation is allowable with respect to that property (section 38 property). Section 48(a)(2)(A) provides that property does not qualify as section 38 property if during the taxable year it is used predominantly outside the United States. Section 48(a)(2)(B)(v), however, provides that a container used predominantly outside the United States nevertheless qualifies for ITC if it is owned by a U.S. person and is "used in the transportation of property to and from the United States" (the container exception).

At trial and in her briefs, respondent took the position that the containers were not eligible section 38 property for 1981, because petitioners had not shown that the containers were

---

[2] The safe harbor leasing provisions were enacted in 1981 as part of the Economic Recovery Tax Act of 1981, Pub. L. 97–34, sec. 201(a), 95 Stat. 172, 214. Pursuant to those provisions, under certain circumstances owners of property who could not use certain tax benefits of ownership (e.g., investment tax credit and accelerated depreciation) were able to transfer some of those benefits to other persons who could use those benefits. See, e.g., S. Rept. 97–144 (1981), 1981–2 C.B. 412, 432. The safe harbor leasing provisions were repealed by sec. 209 of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97–248, 96 Stat. 324, 442.

used substantially in the direct transportation of property to or from the United States during each taxable year of the containers' recovery period. Petitioners, on the other hand, took the position that the containers satisfied the container exception, because those containers were made available for use in the transportation of property to or from the United States. See *Norfolk S. Corp. v. Commissioner, supra.*

In our prior opinion, we found that section 48(a)(2)(B)(v) requires that intermodal cargo containers must actually be used to transport property to or from the United States at least once each year during their recapture period. *Id.* at 46. Accordingly, we held, using our best judgment, that petitioners were not entitled to claim ITC for 54 containers that had no lease activity by December 31, 1983, or for any containers that were leased to lessees that had no U.S. trade routes or exclusively on single-trip leases between two non-U.S. ports. We also held that petitioners were entitled to claim ITC for those containers with a 1981 on-hire or off-hire in the United States and for containers leased to lessees with 100 percent of their container capacity devoted to U.S. trade routes during 1981. In addition, we held that petitioners were entitled to claim ITC for 33⅓ percent of the cost of any remaining containers. *Id.* at 57.

We also stated in the prior opinion that "For those containers for which no ITC is allowed, depreciation shall be computed under the provisions of section 168(f)(2)".[3] *Id.* In her motion for reconsideration, respondent requests, among other

---

[3] Sec. 168(f)(2) provided in pertinent part as follows:

.SEC. 168(f). SPECIAL RULES FOR APPLICATION OF THIS SECTION.—For purposes of this section—

   \*    \*    \*    \*    \*    \*    \*

(2) RECOVERY PROPERTY USED PREDOMINANTLY OUTSIDE THE UNITED STATES.—

  (A) IN GENERAL.—Except as provided in subparagraphs (B) and (C), in the case of recovery property which, during the taxable year, is used predominantly outside the United States, the recovery deduction for the taxable year shall be, in lieu of the amount determined under subsection (b), the amount determined by applying to the unadjusted basis of such property the applicable percentage determined under tables prescribed by the Secretary. \* \* \*

   \*    \*    \*    \*    \*    \*    \*

  (D) DETERMINATION OF PROPERTY USED PREDOMINANTLY OUTSIDE THE UNITED STATES.—For purposes of this paragraph, under regulations prescribed by the Secretary, rules similar to the rules under section 48(a)(2) (including the exceptions under subparagraph (B)) shall be applied in determining whether property is used predominantly outside the United States.

Sec. 168(g) contains the current alternative depreciation system that corresponds to former sec. 168(f)(2).

things, that the Court amend our prior opinion by deleting the above-quoted sentence or otherwise clarifying such holding because under section 168(f)(8)(A) and (D)[4] only property that is eligible for ITC may be the subject of the safe harbor leasing provisions.

Respondent's position in her motion for reconsideration is supported by the temporary regulations promulgated under section 168(f)(8), which provide in pertinent part as follows:

Sec. 5c.168(f)(8)–6 Qualified leased property.

\*    \*    \*    \*    \*    \*    \*

(b) Special rules—(1) New section 38 property. (i) New section 38 property is section 38 property described in subsection (b) of section 48 and the regulations thereunder other than a qualified rehabilitated building (within the meaning of section 48(g)(1)). Qualified leased property must be new section 38 property at the beginning of the lease and must continue to be section 38 property in the hands of the lessor and the lessee through-

---

[4] Sec. 168(f)(8) provides in pertinent part as follows:

(8) SPECIAL RULE FOR LEASES.—

(A) IN GENERAL.—In the case of an agreement with respect to qualified leased property, if all of the parties to the agreement characterize such agreement as a lease and elect to have the provisions of this paragraph apply with respect to such agreement, and if the requirements of subparagraph (B) are met, then, for purposes of this subtitle—

(i) such agreement shall be treated as a lease entered into by the parties * * * and

(ii) the lessor shall be treated as the owner of the property and the lessee shall be treated as the lessee of the property.

\*    \*    \*    \*    \*    \*    \*

(D) QUALIFIED LEASED PROPERTY DEFINED.—For purposes of subparagraph (A), the term "qualified leased property" means recovery property * * * which is—

(i) new section 38 property (as defined in section 48(b)) of the lessor which is leased within 3 months after such property was placed in service and which, if acquired by the lessee, would have been new section 38 property of the lessee,

(ii) property—

(I) which was new section 38 property of the lessee,

(II) which was leased within 3 months after such property was placed in service by the lessee, and

(III) with respect to which the adjusted basis of the lessor does not exceed the adjusted basis of the lessee at the time of the lease, or

\*    \*    \*    \*    \*    \*    \*

For purposes of this title (other than this subparagraph), any property described in clause (i) or (ii) to which subparagraph (A) applies shall be deemed originally placed in service not earlier than the date such property is used under the lease. In the case of property placed in service after December 31, 1980, and before the date of the enactment of this subparagraph, this subparagraph shall be applied by submitting "the date of the enactment of this subparagraph" for "such property was placed in service".

\*    \*    \*    \*    \*    \*    \*

(G) REGULATIONS.—The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this paragraph, including (but not limited to) regulations consistent with such purposes which limit the aggregate amount of (and timing of) deductions and credits in respect of qualified leased property to the aggregate amount (and the timing) allowable without regard to this paragraph.

out the lease term. The fact that the lessee used the property within the 3-month period prior to the lease will not disqualify the property as new section 38 property of the lessee.

(ii) The application of this paragraph (b)(1) may be illustrated by the following examples:

\* \* \* \* \* \* \*

*Example (3).* R Corp., a foreign railroad, acquires new rolling stock and enters into a sale and leaseback transaction with B Corp., a domestic corporation. R uses the rolling stock within and without the United States, but predominantly outside the United States within the meaning of section 48(a)(2)(A). Section 48(a)(2)(B)(ii) is inapplicable to R because R is neither a domestic railroad corporation nor a United States person; therefore, the rolling stock cannot be section 38 property to R. The property is not qualified leased property.

[Sec. 5c.168(f)(8)–6(b), Temporary Income Tax Regs. under the Economic Recovery Tax Act of 1981, 46 Fed. Reg. 51911 (Oct. 23, 1981).]

In their objection to respondent's motion for reconsideration, petitioners do not disagree substantively with respondent's position that depreciation is not available under section 168(f)(8)(A) and (D) to a safe harbor "lessor" (to wit, petitioners) for property that is not eligible section 38 property. Rather, they contend that respondent's position that petitioners are not eligible to have depreciation computed under section 168(f)(2) is contrary to paragraph 17 of the stipulation of facts (stipulation) filed September 20, 1993. Petitioners contend further that paragraph 17 of the stipulation is consistent with the issues in these cases as understood by both parties.

Paragraph 17 of the stipulation states as follows:

17. The economic substance of the transaction was that Norfolk paid $18,032,147 in cash and received all rights of Flexi-Van to claim the investment tax credits and accelerated depreciation deductions with respect to the Containers, chassis and trailers. There was no transfer of title or possession of the Containers and chassis from Flexi-Van to Norfolk at any time.

Petitioners assert that in paragraph 17 the parties stipulated that petitioners were entitled to receive any ITC or depreciation that Flexi-Van would have received. Petitioners contend that, since section 168(f)(2) prescribes the depreciation deductions that Flexi-Van would have received for the nonqualified containers had Flexi-Van not sold the tax benefits relating to those containers to petitioners, pursuant to paragraph 17 of the stipulation, petitioners similarly are

entitled to have the depreciation deductions for those containers computed under section 168(f)(2).

Petitioners rely on a reference to section 168(g) that respondent made in a motion for continuance dated December 18, 1992,[5] and a statement in respondent's trial memorandum, filed September 20, 1993, in which respondent describes the safe harbor lease as the instrument under which petitioners "acquired Flexi's tax attributes" in the containers, to support their contention that the only issue framed for trial, argued, and briefed was "what actual use, if any, petitioners as the owners of the Containers were required to prove for purposes of ITC and depreciation".[6] According to petitioners, respondent now is attempting in her motion for reconsideration to redefine the issue in these cases to be whether petitioners are entitled to deduct depreciation under section 168(f)(2).

We do not agree with petitioners that respondent's position on the applicability of section 168(f)(2) is contrary to paragraph 17 of the stipulation. Nor do we find that in that paragraph 17 respondent, in effect, conceded that petitioners were entitled to compute the depreciation deductions for non-qualified containers under section 168(f)(2). We do not interpret paragraph 17 of the stipulation to be a concession that respondent was abandoning her position, asserted in the notices of deficiency, that containers that fail to meet the container exception do not qualify for treatment under section 168(f)(8) because they are not "qualified leased property". Indeed, respondent reiterated that position in her trial memorandum and her opening brief.

In addition, we do not agree with petitioners' contention that respondent is attempting to change the issues framed for trial. Petitioners' entitlement to a depreciation deduction

---

[5] In respondent's motion for continuance, filed Dec. 22, 1992, respondent alleged, among other things, that

4. The ultimate issue raised in the notices of deficiency issued in these cases and the parties' pleadings concerns whether the petitioners are entitled to claimed investment credit and accelerated depreciation deductions under I.R.C. §§ 48(a)(2)(B)(v) and 168(g) respectively, relating to certain intermodal cargo containers which were the subject of "safe harbor" leases entered into by the petitioners and a leasing company, Flexi-Van Leasing, Inc. * * *

[6] For purposes of the safe-harbor leasing provisions, under sec. 168(f)(8) petitioners are treated as the lessors, and deemed the owners, of those containers that are "qualified leased property" as defined in sec. 168(f)(8)(D). See Greene v. Commissioner, 88 T.C. 376, 380–383 (1987); Armstrong World Indus., Inc. v. Commissioner, T.C. Memo. 1991–326, affd. 974 F.2d 422 (3d Cir. 1992).

for the containers rests upon a finding that those containers met the definition of "qualified leased property" under section 168(f)(8)(D). To so qualify, the containers had to satisfy the container exception for 1981. Whether the containers met that exception was the ultimate issue tried and decided. Respondent's position does not change the issue but merely reflects the legal effect of our decision relating to that issue as it pertains to depreciation for the nonqualified containers.

Petitioners contend that our reference to section 168(f)(2) in the prior opinion is consistent with the remainder of that opinion. In support, petitioners quote our statement in the prior opinion that "Under the safe harbor lease petitioners stand in the shoes of Flexi-Van with regard to ITC and accelerated depreciation during the years in issue." *Norfolk S. Corp. v. Commissioner*, 104 T.C. at 16. Petitioners assert that this statement reflects the manner in which the parties framed the issue for trial. Petitioners misinterpret the intent of the above-quoted statement. We intended by that statement to explain why petitioners, rather than Flexi-Van, had claimed the ITC and accelerated depreciation. By that statement, we did not intend to confer upon petitioners an entitlement to ITC or accelerated depreciation that was not provided by statute.

Upon reconsideration, we agree with respondent that petitioners are not entitled to have depreciation computed in accordance with section 168(f)(2) for those containers that do not satisfy the container exception in 1981, because those containers do not meet the definition of qualified leased property. Sec. 168(f)(2), (8). Our holding to the contrary in the prior opinion is incorrect, and the prior opinion accordingly shall be modified to reflect that section 168(f)(2) does not apply to the nonqualified containers.

Additionally, in her motion for reconsideration respondent requests that the prior opinion be clarified to inform the parties how to determine depreciation allowable under section 168(f)(8) for the years in issue for those containers that we found qualified for ITC for 1981. We made no decision in the prior opinion relating to calculation of allowable depreciation for those containers because the parties, under the all-or-nothing approach each elected to follow at trial and on brief, never addressed that question. We were in no position then, nor are we now, to make a determination relating to calcula-

tion of the allowable depreciation deductions. We see no reason why the parties cannot agree during the Rule 155 proceedings on an appropriate method for calculating those depreciation deductions.[7]

To reflect the foregoing,

> *An order granting in part and denying in part respondent's motion for reconsideration will be issued.*

---

[7] We suggest that the parties may seek guidance in Rev. Proc. 90–10, 1990–1 C.B. 467.