110 T.C. No. 15


UNITED STATES TAX COURT


VULCAN OIL TECHNOLOGY PARTNERS, VANGUARD OIL TECHNOLOGY PARTNERS,
DRAKE OIL TECHNOLOGY PARTNERS, DILLON OIL TECHNOLOGY PARTNERS,
DERRINGER OIL TECHNOLOGY PARTNERS-1981, DERRINGER OIL TECHNOLOGY
PARTNERS-1982, CROWNE OIL TECHNOLOGY PARTNERS, CARLTON OIL
TECHNOLOGY PARTNERS, LTD., AMERICAN ENERGY RESOURCES, INC., TAX
MATTERS PARTNER, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 21530-87, 16768-88,        Filed March 5, 1998.
              24725-89.

---

[1]     Cases of the following petitioners are consolidated
herewith:  Vulcan Oil Technology Partners, Vanguard Oil
Technology Partners, Drake Oil Technology Partners, Dillon Oil
Technology Partners, Derringer Oil Technology Partners 1981,
Derringer Oil Technology Partners 1982, Crowne Oil Technology
Partners, Carlton Oil Technology Partners, Ltd., American Energy
Resources, Inc., Tax Matters Partner, docket No. 16768-88; and
Crowne Oil Technology Partners, American Energy Resources, Inc.,
Tax Matters Partner, docket No. 24725-89.

Movants were investors in the so-called Elektra Hemisphere tax shelters. Among other things, movants' motions seek from the Court orders --

(1) under the TEFRA partnership provisions and under Rule 245(b) that would grant movants leave to file untimely notices of election to participate in the instant consolidated TEFRA partnership proceedings with attached notices of election to participate;

(2) under Rule 50 that would set aside settlement agreements that were entered into by most of the movants herein during 1994 and later years; and

(3) under the TEFRA partnership provisions that would require respondent now to enter into settlement agreements with movants consistent with settlement terms that were available to investors in the Elektra Hemisphere tax shelters during 1986, 1987, and 1988.

Held: Movants' motions are denied.

Declan J. O'Donnell, for movants.

Marilyn S. Ames and Dennis M. Kelly, for respondent.

OPINION

SWIFT, Judge: This matter is before the Court in these consolidated cases on movants' motions, under the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96

Stat. 324, partnership provisions and under Rule 245(b),[2] for leave to file untimely notices of election to participate with attached notices of election to participate, and motions, under Rule 50, to set aside settlement agreements and/or to require respondent now to enter into consistent settlement agreements. An evidentiary hearing was held on May 21, 1997, in regard to these motions.

The particular years before us in these consolidated cases are 1983, 1984, and 1985 -- years subject to the TEFRA partnership provisions. In Estate of Campion v. Commissioner, 110 T.C. __ (1998), with regard to years prior to the effective date of the TEFRA partnership provisions, other investors in the Elektra Hemisphere tax shelters have filed motions similar to the instant motions. Our opinion in Campion is also filed this date.

The underlying tax shelter investments that are involved in these consolidated cases constitute investments in seven Denver-based limited partnerships and are related to the so-called Elektra Hemisphere tax shelter investments that were the subject of litigation in this Court in Krause v. Commissioner, 99 T.C. 132 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994); Acierno v. Commissioner, T.C. Memo. 1997-441;

---

[2]     Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code for the years in issue.

Karlsson v. Commissioner, T.C. Memo. 1997-432; and Vanderschraaf v. Commissioner, T.C. Memo. 1997-306.

In Acierno v. Commissioner, supra, we found that the Denver-based partnerships that are involved in the instant cases were similar to the Manhattan and Wichita partnerships that were involved in the lead test cases in the Elektra Hemisphere tax shelter project of Krause v. Commissioner, supra, and accordingly that the limited partners of the Denver-based partnerships who had not settled their cases with respondent were to be bound by the opinion in Krause. The settlements that most of the movants herein entered into, during 1994 and later years, are consistent with our decisions in Krause and the above-cited related cases (namely, no deductions are to be allowed to the taxpayers relating to their investments in the Elektra Hemisphere tax shelters, and the taxpayers are not to be held liable for additions to tax or penalties other than increased interest under section 6621(c) or its predecessor section 6621(d)) (hereinafter referred to as the no-cash settlements).

On an untimely basis, the majority of the movants herein now seek permission from the Court to file notices of election to participate in the instant TEFRA partnership proceedings for the purpose of seeking an order from the Court that would set aside the no-cash settlement agreements that they entered into and that would require respondent to enter into revised settlement

agreements with movants consistent with the more favorable settlement terms that were available generally to investors in the Elektra Hemisphere tax shelters during 1986, 1987, and 1988 (namely, tax deductions were allowed for the amount of cash that investors had invested in the Elektra Hemisphere tax shelters and no additions to tax or penalties were imposed other than increased interest under section 6621(c) or its predecessor section 6621(d) (hereinafter referred to as the cash settlements).

The remaining movants herein have not yet entered into any settlement agreements with respondent relating to tax benefits movants claimed on their Federal income tax returns relating to their Elektra Hemisphere tax shelter investments. Such movants seek from the Court an order that would require respondent to now enter into settlement agreements with them consistent with the cash settlements that were available generally to investors in the Elektra Hemisphere tax shelters during 1986, 1987, and 1988.

All of the movants herein seek permission from the Court to file notices of election to participate in the instant TEFRA partnership proceedings solely for purposes of obtaining from the Court an order requiring respondent to enter into settlements with them consistent with the terms of the cash settlements.

Beginning in 1986, respondent's settlement position with regard to investments in the Elektra Hemisphere tax shelters reflected the cash settlement terms to which many investors,

during 1986, 1987, and 1988, agreed, including many investors who had invested in the seven Denver-based Elektra Hemisphere partnerships.  Over the years, however, respondent's settlement position relating to the Elektra Hemisphere tax shelters has changed, and terms of the settlement offers that respondent has made available to investors have changed accordingly.  As time progressed and as the Krause v. Commissioner, supra, lead test cases approached trial, respondent's settlement position generally became less favorable to investors and more favorable to respondent.  Each of respondent's various settlement positions contained time deadlines or termination dates beyond which a particular settlement position would no longer be available to investors.

As indicated, after the opinion in Krause v. Commissioner, supra, was rendered by this Court, many of the movants herein agreed to settle on the basis of respondent's then pending no-cash settlement position.

In the instant motions, movants allege that a structural defect or a fraud on the Court occurred in obtaining from movants the above-referenced no-cash settlements and that respondent had, and has, under the TEFRA partnership provisions, a continuing duty of consistency to treat all investors in the Elektra Hemisphere tax shelters consistently and to affirmatively now make available

to all investors the most favorable settlement terms that ever were offered to any of the investors.

More specifically, movants allege --

(1) that the no-cash settlements that were agreed to by movants herein during 1994 and later years were premised on the erroneous fact that no better settlements were available to investors;

(2) that during 1994 and later years, when the no-cash settlements that movants now seek to set aside were entered into, movants and their counsel allegedly were not aware of the prior more favorable cash settlements that other taxpayers had entered into during 1986, 1987, and 1988; and

(3) that under the TEFRA partnership provisions movants herein, during 1994 and later years, should have been and should now be allowed to settle their tax adjustments relating to their investments in the Elektra Hemisphere tax shelters consistently with the cash settlements offered in prior years.

Movants further allege the existence of "a pervasive and manufactured conspiracy" among respondent's counsel to deprive movants herein and other taxpayers of proper TEFRA partnership settlement procedures. Movants contend that the allegedly defective settlement procedures respondent utilized in obtaining settlements with movants herein affected thousands of investors in the Elektra Hemisphere tax shelters.

In response, respondent emphasizes that the no-cash settlements that movants agreed to and that they now seek to disavow are based on and are consistent with the results of the above-cited test cases. Respondent argues that movants herein

(having refused to settle on a cash basis in 1986, 1987, and 1988, having "waited out" the litigation of the lead test cases until our opinion in Krause v. Commissioner, supra, was rendered in 1992, and now not liking the results) are simply the victims of their own procrastination or litigation strategy, not of any structural defect or fraud on the Court.

Respondent also emphasizes that, under the TEFRA provisions, respondent had no affirmative obligation to notify movants that, in earlier years, some of the Elektra Hemisphere investors settled their disputes with respondent relating thereto on any particular terms.

Respondent responds further that --

(1) movants did not make timely requests for consistent settlements during the time period when respondent's cash settlement position was open to all Elektra Hemisphere investors;

(2) that there is no requirement that respondent specifically notify each investor of each settlement agreement; and

(3) with regard to the specific settlement agreements that movants entered into, movants have not shown any fraud, malfeasance, or misrepresentation as a basis for setting aside the settlement agreements.

We agree with each of respondent's arguments.

The evidence indicates that the cash settlements that, during 1986, 1987, and 1988, many investors entered into with respondent reflected a date of September 30, 1986, by which date, under the

terms of respondent's offer to settle, investors needed to notify respondent of their willingness to settle on that basis. Those investors who so notified respondent were allowed in 1986, 1987, and 1988 to finalize the related computations under the cash settlements.

The schedule below sets forth the specific dates on which respondent mailed notices of Final Partnership Administrative Adjustments (FPAA's) to the Denver-based partnerships with respect to 1983, 1984, and 1985 and also the latest dates on which cash settlement agreements were finalized with partners in each of the partnerships:[3]

| Year | Partnership | Date FPAA Mailed | Date of Latest Settlement |
|------|-------------|------------------|---------------------------|
| 1983 | Crowne | 4/15/87 | 12/29/87 |
| | Derringer-1981 | 3/30/87 | 11/17/87 |
| | Derringer-1982 | 3/30/87 | 12/08/87 |
| | Dillon | 4/15/87 | 11/15/88 |
| | Drake | 4/06/87 | 12/22/87 |
| | Vanguard | 3/30/87 | 9/10/87 |
| | Vulcan | 3/30/87 | 9/23/87 |

[3] The schedule reflects information with regard to each of the Denver-based Elektra Hemisphere tax shelter partnerships except for those partnerships with respect to whose partners either no prior cash settlements were entered into or with respect to which no consistent settlements have been requested by any of the movants herein (namely, Carlton Oil Technology Partners, Ltd., for 1984 and 1985, Crowne Oil Technology Partners for 1984 and 1985, Derringer Oil Technology Partners-1981 for 1984 and 1985, Dillon Oil Technology Partners for 1985, Vanguard Oil Technology Partners for 1984 and 1985, and Vulcan Oil Technology Partners for 1984 and 1985).

| 1984 | Derringer-1981 | 4/11/88 | 11/17/87 |
|------|----------------|---------|----------|
|      | Derringer-1982 | 3/28/88 | 12/08/87 |
|      | Dillon         | 4/11/88 | 11/15/88 |
| 1985 | Derringer-1981 | 4/11/88 |  9/17/87 |
|      | Derringer-1982 | 3/28/88 | 12/08/87 |

As settlement agreements were finalized, personnel in respondent's Ogden Service Center, which was the key-case Service Center for the Denver-based Elektra Hemisphere tax shelter partnerships, generally mailed copies of the final agreements to the tax matters partner of each partnership.

In late 1993 and early 1994, respondent mailed settlement offers to investors in the Denver-based partnerships who had not previously settled, reflecting respondent's then-current no-cash settlement position. The mailing from respondent contained a standard transmittal letter, a schedule of partnership adjustments consistent with this Court's opinion in Krause v. Commissioner, 99 T.C. 132 (1992), and a proposed settlement agreement form.

Respondent's transmittal letters contained a statement that "we have completed settlement negotiations for the partnership shown above," and indicated a 30-day deadline for acceptance of the terms of the settlement.

All of the movants in these cases with respect to the instant motions (except Frank Acierno, Jack and Katherine Schoellerman, Mary F. Hill, and David and Barbara Jonson) executed settlement agreements reflecting the no-cash settlement terms consistent with

the Krause opinion and such settlements were finalized.  The earliest settlement agreement executed by a movant herein was signed on January 3, 1994, and the latest one was signed on December 1, 1994.

Between February 16 and March 27, 1995, written requests to respondent were made by the movants herein (with exception of William and Arlene Ginn and Lomand and Janice Beals)[4] for the opportunity to set aside their prior no-cash settlement agreements with respondent and to enter into new settlement agreements with respondent consistent with the cash settlement terms that had been entered into by other investors during 1986, 1987, and 1988. Respondent denied each such request on the grounds that each request was untimely, that each investor making such request had previously entered into a settlement agreement with respondent, and that each such settlement agreement had converted the investors' partnership items to nonpartnership items.

The TEFRA provisions expressly provide that where a settlement agreement is entered into between respondent and a partner in a partnership before issuance of the relevant FPAA to the tax matters partner (TMP), other partners who wish to enter into consistent settlement agreements must make requests therefor within 150 days after the FPAA is mailed to the TMP.  Section

---

[4]     The Ginns and the Beals appear not to have made a written request to respondent for a consistent settlement.

6224(c)(2) reads in pertinent part and with exceptions not applicable herein, as follows:

>       SEC. 6224(c)(2).  Other partners have right to enter into consistent agreements.--If the Secretary enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement. * * * this paragraph shall apply with respect to a settlement agreement entered into with a partner before notice of a final partnership administrative adjustment is mailed to the tax matters partner only if such other partner makes the request before the expiration of 150 days after the day on which such notice is mailed to the tax matters partner.

Where, after issuance of the related FPAA to the TMP, a settlement agreement is entered into with a partner, section 301.6224(c)-3T(c)(3), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987), provides that other partners who wish to enter into consistent settlement agreements must submit a request therefor to respondent within either 150 days after the FPAA was issued or 60 days after the day on which the prior settlement was entered into, whichever is later.  Section 301.6224(c)-3T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987), reads in part as follows:

>       (a) In general.  If the Service enters into a settlement agreement with any partner with respect to partnership items, the Service shall offer to any other partner who so requests in accordance with paragraph (c) of this section settlement terms which are consistent with those contained in the settlement agreement entered into.

\*      \*      \*      \*      \*      \*      \*

(c) Time and manner of requesting consistent settlements--(1) In general.  A partner desiring settlement terms consistent with the terms of any settlement agreement entered into between any other partner and the Service shall submit a written statement to the Internal Revenue Service office that entered into the settlement.

\*      \*      \*      \*      \*      \*      \*

(3) Time for filing request.  The statement shall be filed not later than the later of --

(i) The 150th day after the day on which the notice of final partnership administrative adjustment is mailed to the tax matters partner, or

(ii) The 60th day after the day on which the settlement was entered into.

At the time the cash settlements involved in these cases were entered into, there was no statutory or regulatory provision that placed on respondent the duty to notify each partner in a TEFRA partnership that a settlement was entered into.  Rather, section 6223(g) and section 301.6223(g)-1T(b)(1)(iv), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6786 (Mar. 5, 1987), placed the duty on the TMP to keep each partner informed about settlement offers that had been entered into by partners.  It was the TMP, not respondent, who had the duty of notification to other investor-partners of the fact and date that settlements were entered into.

Movants erroneously rely on Rule 248 as a ground for establishing that, during 1986 through 1988, notice to them of the cash settlements was defective.  Rule 248(c)(1), which requires

notification to the Court, only applies to settlements with participating partners, and the evidence does not establish that any of the participating partners in the instant cases ever entered into prior cash settlements with respondent.  Also, Rule 248(c)(2), which requires respondent to give notice to the TMP's when a partner enters into a settlement, was not effective until September 1, 1988, see Note to Rule 248(c)(2), 90 T.C. 1376 (1988), and there is no credible evidence that respondent failed to comply with Rule 248(c)(2) after that date.

For the period January 19, 1984, through September 1, 1989, a provision of respondent's manual provided that upon receipt of a settlement in a TEFRA partnership audit or proceeding, respondent's Service Center was to notify the appropriate TMP's of the settlement, and the responsibility then fell on the TMP's to notify other partners of the settlement.  Movants argue that respondent did not follow this manual procedure with regard to the Elektra Hemisphere tax shelter partnerships, and therefore that all movants herein (those who already entered into no-cash settlements and those who have not yet entered into any settlements) should now be entitled to enter into cash settlements.  With regard to this argument, we note that movants have failed to present any credible testimony from the TMP's of the partnerships, from other partners, from their representatives, or others to support their claim that respondent failed to give

proper notice of settlements to the TMP's under this manual provision and that the TMP's and other partners did not timely know of cash settlements that were available during 1986, 1987, and 1988.

Also, failure of respondent to comply with the above manual provision would provide little support for granting movants' motions herein.  See United States v. Caceres, 440 U.S. 741 (1979); Keado v. United States, 853 F.2d 1209 (5th Cir. 1988); Lojeski v. Boandl, 788 F.2d 196 (3d Cir. 1986); and United States v. Horne, 714 F.2d 206 (1st Cir. 1983), which provide that irregularities in following manual provisions not involving constitutional rights generally will not give rise to legal remedies.

Further, section 6230(f) expressly provides that the failure of the TMP to provide notice or to perform any act on behalf of any partner, as required by either the statute or the regulations, would not affect the applicability of any partnership proceeding or adjustment to such partner.  Thus, despite the TMP's alleged failure to provide notice to movants of cash settlements that were entered into in 1986 through 1988, movants herein have no right now to require respondent to enter into cash settlements.

Under no statutory or regulatory provision, Court rule, or other basis, was respondent required to give movants herein notice of cash settlements that, during 1986 through 1988, were entered

into between respondent and investors in the Elektra Hemisphere tax shelters.  Responsibility for providing notice to movants was with the TMP's of the various Elektra Hemisphere tax shelter partnerships.

The latest cash settlement agreements that were entered into between respondent and investors with respect to each of the 1983 Elektra Hemisphere partnership tax years in question and with respect to the 1984 tax year of the Dillon partnership were entered into in late 1987 and late 1988 <u>after</u> the respective FPAA's were mailed to the respective TMP's in early 1987 and early 1988.  Any requests by movants herein for consistent settlements with regard to those specific partnerships and those specific years should have been made within 60 days after the latest cash settlement was entered into.  Since movants' requests for consistent settlements pertaining to 1983 and 1984 were made by movants in 1995, they are untimely by approximately 6 years.

With respect to the 1984 and 1985 tax years of Derringer-1981 and 1982, the latest cash settlement agreements were entered into in November and December of 1987, <u>before</u> respondent's FPAA's were mailed to the TMP's in March and April of 1988.  Since the settlements were entered into before the FPAA's were mailed, the timeliness of movants' requests for consistent settlements is controlled by section 6224(c)(2), and the requests are untimely

because they were not made within the 150-day deadline. Rather, they were made more than 6 years thereafter.

With regard to Carlton, no cash settlements were entered into during the 1986 through 1988 years or thereafter, and therefore there exists no cash settlement in respect to which any of the movants herein can even seek a consistent settlement.

In spite of the fact that no prior cash settlements exist for some of the Elektra Hemisphere tax shelter partnerships for the years involved herein, some of the movants herein -- who were partners in such partnerships -- argue that they nevertheless should now be entitled to cash settlements for such years. Such requests for "consistent" settlements are based on cash settlements that were entered into with partners in partnerships other than partnerships in which movants invested and/or with respect to years other than years in which movants invested. For example, there were no cash settlements entered into by any partners in Crowne for 1984, but five of the movants herein are partners in Crowne and are now requesting cash settlements for that year.

Under a plain reading of section 6224(c)(2), "any other partner" is to be interpreted only as a partner in the same partnership, and "partnership items" relate only to the same partnership tax year. Partners in different partnerships and partners in the same partnerships for different years do not have

the same partnership items.  Absent a specific agreement or stipulation to the contrary, the consistent settlement rules of section 6224(c)(2) do not apply to an entire tax shelter project, nor to partnerships within a group of related partnerships (such as the Denver-based Elektra Hemisphere tax shelter partnerships).

What we said in Boyd v. Commissioner, T.C. Memo. 1992-626, in this regard is pertinent --

> Even if TEFRA were to apply, the settlement agreement for * * * [partnership A] would not be imposed on petitioner or any other partner in * * * [partnership B] because * * * [partnership B] is a separate partnership from * * * [partnership A]. Petitioner was not a partner in * * * [partnership A] or any of the six other partnerships for which settlement agreements were reached.  There is no provision in the Code requiring * * * [respondent] to settle the * * * [B partnership] under the same settlement terms that were negotiated for the * * * [A partnership], a separate and distinct partnership.  [Citation omitted.]

Lastly, we address briefly movants' allegations that fraud, malfeasance, and misrepresentations of fact occurred that provide a basis for setting aside the no-cash settlements that the majority of the movants herein entered into with respondent with respect to their investments in the Elektra Hemisphere tax shelters.

Movants cite DuFresne v. Commissioner, 26 F.3d 105 (9th Cir. 1994), vacating and remanding T.C. Memo. 1991-614, in which the U.S. Court of Appeals for the Ninth Circuit vacated a decision in a test case and remanded the case for further proceedings based on

information that a corruption of the processes of this Court and of the rights of the taxpayers may have occurred, allegedly as a result of secret, out-of-the-ordinary settlement agreements entered into between respondent and certain trial witnesses. Nothing comparable is presented to us in the instant consolidated cases.

The credible evidence herein indicates that the settlement agreements available to investors in the Elektra Hemisphere tax shelters during 1986 and 1987 were available to all investors. No credible evidence corroborates movants' contentions that in 1986 and 1987 they, or their counsel, were not aware of respondent's willingness to settle their tax disputes relating to investments in the Elektra Hemisphere tax shelters on the same cash basis on which other taxpayers during those years settled with respondent.

Movants' reliance on some ambiguities in certain forms and letters mailed by respondent to movants regarding terms of settlements that were available is futile. There is no credible evidence that such ambiguities were intentional, that they gave rise to material misrepresentations, or that they in any way constituted fraud or malfeasance.

There is no evidence herein that would support a finding of fraud, malfeasance, or misrepresentations of fact on respondent's behalf with regard to any aspect of the cash settlements that were entered into during 1986 through 1988 between respondent and other

Elektra Hemisphere investors and with regard to any aspect of the no-cash settlements that were entered into in later years between respondent and movants herein.

For the reasons stated, each of movants' motions will be denied.

<u>Appropriate orders will
be issued</u>.