110 T.C. No. 16


UNITED STATES TAX COURT


ESTATE OF JAMES T. CAMPION, DECEASED, LEONA CAMPION, EXECUTRIX,
ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos.  12235-86, 22346-86,    Filed March 5, 1998.
             31310-86, 32931-86,
              4142-87, 12476-87,
             18986-87, 21147-87,
             24227-87, 24013-88,
              4646-89,  7300-89,
              8272-89, 18502-89.

---

[1]    Cases of the following petitioners are consolidated herewith:  Ladd T. Tucek and Philamena Tucek, docket No. 22346-86; Tony W. and Candace P. Dial, docket No. 31310-86; George M. and Grace E. Collins, docket Nos. 32931-86 and 12476-87; James and Lynne M. Lotta, docket Nos. 4142-87 and 7300-89; Alden B. and Earlene Chase, docket No. 18986-87; Edward R. and Sandra Chase, docket No. 21147-87; Thomas L. and Betty R. Saliba, docket No. 24227-87; Estate of James T. Campion, Deceased, Leona C. Campion, Executrix, and Leona C. Campion, docket No. 24013-88; Scott K. and Barbara F. Monroe and Charles R. and Iva M. Reif, docket No. 4646-89; Dwight V. and Christine G. Call, docket No. 8272-89; and Michael and Mary Lee Rafferty, Jr., Thomas L. and Betty R. Saliba, and Theodore L. and Rosemary L. Shebs, docket No. 18502-89.

Petitioners (investors in the so-called Elektra Hemisphere tax shelters) move for leave to file motions under Rule 162 to vacate final decisions that have been entered herein and to require respondent now to enter into revised settlement agreements with petitioners (that reflect settlement terms available from respondent to investors in 1986, 1987, and 1988). <u>Held</u>: Petitioners' motions are denied.

<u>Declan J. O'Donnell</u>, for petitioners.

<u>Michael W. Bitner</u>, for respondent.

OPINION

SWIFT, <u>Judge</u>: This matter is before the Court in these consolidated cases on petitioners' motions for leave to file motions to vacate decisions with attached motions to vacate under Rule 162.

Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code for the years in issue.

In each of these cases, petitioners and respondent settled all issues, and final decisions have been entered. The 90-day appeal period has expired, and petitioners now seek orders from the Court vacating the decisions and requiring respondent to enter into new settlement agreements with petitioners that would

reflect settlement terms that were available to investors in the so-called Elektra Hemisphere tax shelters in 1986, 1987, and 1988.

The particular years before us in these consolidated cases are 1979, 1980, 1981, and 1982 -- years prior to the effective date of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, partnership provisions. In Vulcan Oil Tech. Partners v. Commissioner, 110 T.C. __ (1998), with regard to 1983 and later years that are subject to the TEFRA partnership provisions, other investors in the Elektra Hemisphere tax shelters have filed motions similar to the instant motions. Our opinion in Vulcan is also filed this date.

The underlying tax shelter investments that are involved in these consolidated cases are referred to as investments in certain Denver-based limited partnerships and were related to the Elektra Hemisphere tax shelters that were the subject of litigation in this Court in Krause v. Commissioner, 99 T.C. 132 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994); Acierno v. Commissioner, T.C. Memo. 1997-441, Karlsson v. Commissioner, T.C. Memo. 1997-432; and Vanderschraaf v. Commissioner, T.C. Memo. 1997-306.

In Acierno v. Commissioner, supra, we found that the Denver-based partnerships that are involved in the instant cases were similar to the Manhattan and Wichita partnerships that were

involved in the test cases of <u>Krause v. Commissioner</u>, <u>supra</u>, and accordingly that the limited partners of the Denver-based partnerships who had not settled their cases with respondent were to be bound by the opinion in <u>Krause</u>. The settlements that petitioners herein entered into and that they now seek to set aside are consistent with our decisions in <u>Krause</u> and the above-cited related cases (namely, no deductions are to be allowed to the taxpayers relating to their investments in the Elektra Hemisphere tax shelters, and the taxpayers are not to be held liable for additions to tax or penalties other than increased interest under section 6621(c) or its predecessor section 6621(d)) (hereinafter referred to as the no-cash settlements).

Beginning in 1986, respondent made a number of offers to the investors-taxpayers to settle tax adjustments that respondent had determined involving the Elektra Hemisphere tax shelters, including those in the Denver-based partnerships. Over the years, respondent's settlement position with regard to the issues involved in the Elektra Hemisphere tax shelters has changed, and terms of the settlement offers that respondent has made available to investors have changed accordingly. As time progressed and as the test cases approached trial, respondent's settlement position generally became more favorable to respondent and less favorable to the investor-taxpayers. Each of respondent's various settlement positions contained time deadlines or termination

dates beyond which a particular settlement position would no longer be available.

Under respondent's settlement position as of 1986, investors generally were allowed tax deductions reflecting the full amount of their cash out-of-pocket invested in the respective Elektra Hemisphere tax shelter, and no penalties or additions to tax were imposed other than increased interest under section 6621(c) or its predecessor section 6621(d) (hereinafter referred to as the cash settlement). Petitioners herein did not agree to settle the tax deficiencies and additions to tax that respondent had determined against them relating to their investments in the Elektra Hemisphere tax shelters on that basis. Rather, petitioners waited until after the opinion in Krause v. Commissioner, supra, was rendered in 1992 and agreed to settle at that time, or in later years, on the basis of respondent's then pending no-cash settlement position. Not only did petitioners agree to settle, but petitioners signed stipulated decision documents reflecting the no-cash settlement position, and such decision documents were entered by the Court and are now final.

Petitioners allege that a structural defect or a fraud on the Court occurred in settling these cases and that respondent, under the TEFRA partnership statutory provisions, had a duty of consistency to treat all taxpayers consistently and to make

available to all taxpayers <u>at</u> <u>all</u> <u>points</u> <u>in</u> <u>time</u> the most favorable settlement terms that were offered to any taxpayer.

More specifically, petitioners allege --

(1) that the settlements that were agreed to in the instant cases were premised on the erroneous fact that no better settlements were available to the taxpayers;

(2) that because of the express language of section 6224(c)(2), the TEFRA partnership <u>settlement</u> procedures apply to partnerships for all years, once partnerships are subject to the general TEFRA partnership provisions for any year;

(3) that, during 1994 and later years, when petitioners entered into their settlements for the pre-TEFRA years (1979-1982), petitioners and their counsel allegedly were not notified by respondent of the prior, more favorable cash settlements that other taxpayers during 1986, 1987, and 1988 had agreed to; and

(4) that (because of (2) above) the Elektra/Hemisphere tax shelter partnerships' pre-TEFRA years effectively became, or should be treated as becoming, subject to the TEFRA partnership settlement procedures.  Thus, petitioners herein allege that during 1994 and later years they should have been allowed to settle their cases consistent with the most favorable settlement terms offered to any other taxpayers at any time.

Petitioners allege the existence of "a pervasive and manufactured conspiracy" among respondent's counsel to deprive them and other taxpayers of the TEFRA <u>settlement</u> procedures for pre-TEFRA years.  Petitioners allege that the defective settlement procedures that were utilized to settle the instant cases also affected some 2,000 other settlement agreements and a total of 12,000 case dispositions.

Petitioners' overriding argument based on the TEFRA statutory provisions is that this Court's jurisdiction over TEFRA settlement procedures is broader than this Court's jurisdiction over cases in general.  Petitioners point to the "Except as otherwise provided" language of section 6221 and to the language of section 6224(c)(2).  Petitioners interpret the language of the latter section as providing that once a partnership becomes subject to the TEFRA provisions for any year and for any purpose, the partnership and each of its partners should be treated, for settlement purposes, as becoming subject to the TEFRA partnership provisions for all years.  Petitioners then argue that under such TEFRA settlement provisions they were entitled in 1994 and later years, when they settled with respondent their particular Elektra Hemisphere tax shelter cases, to be specifically informed of and to take advantage of the most favorable settlement terms that respondent ever offered any of the partners in the Elektra Hemisphere tax shelters (namely, the cash settlements available during 1986, 1987, and 1989).

Respondent emphasizes that the no-cash settlements that petitioners now seek to disavow are based on and are consistent with the results of the test cases that were decided with respect to the Elektra Hemisphere tax shelters.  Krause v. Commissioner, 99 T.C. 132 (1992); see also Acierno v. Commissioner, T.C. Memo. 1997-441.  Respondent argues that petitioners (having refused to

settle in 1986, 1987, or 1988, having "waited out" the litigation of the Krause test cases until our opinion therein was rendered in 1992 and until the appeal thereof became final in 1994, and now not liking the results) are simply the victims of their own procrastination or litigation strategy, not of any structural defect or fraud on the Court.

Petitioners acknowledge that under the TEFRA partnership provisions the redetermination jurisdiction of this Court is generally limited (with an exception not applicable here) to taxable years beginning after September 3, 1982. Petitioners, however, cite the language of section 6224(c)(2) and argue that the TEFRA partnership settlement procedures apply to every partnership year once the partnership is subject to the general TEFRA partnership provisions for any year.

Section 6224(c)(2) provides, in pertinent part, as follows:

> SEC. 6224(c)(2). Other partners have right to enter into consistent agreements.--If the Secretary enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement. * * *

We disagree with petitioners' interpretation of section 6224(c)(2). Section 407 of TEFRA, 96 Stat. 610-671, expressly and specifically provides that its provisions, including the

settlement procedures of section 6224, apply only to partnership taxable years beginning after September 3, 1982, with an exception not here relevant.  Section 407(a)(1) of TEFRA, 96 Stat. 670, provides as follows:

> Except as provided in paragraph (2), the amendments made by sections 402, 403, and 404 shall apply to partnership taxable years beginning after the date of the enactment of this Act.  [Sept. 3, 1982.]

Further, petitioners' interpretation is belied by the plain language of the statute, which refers to a "partnership taxable year".  The statute by its terms does not require that a settlement made with a partner in respect of a partnership's taxable year be extended to another partner for an earlier taxable year.  A fortiori, no such requirement would seem to exist if the later year is covered by the TEFRA procedures and the earlier year is not.

In Consolidated Cable, Ltd. v. Commissioner, T.C. Memo. 1990-657, affd. without published opinion 995 F.2d 222 (5th Cir. 1993), we implicitly recognized that the TEFRA partnership provisions did not apply to partnership taxable years that began before September 4, 1982.

In Ackerman v. Commissioner, T.C. Memo. 1996-315, the taxpayers entered into settlement agreements for 1982, 1983, and 1984 (that were subject to the TEFRA provisions), and we held

that respondent was not precluded from making different adjustments for 1981, a year not covered by the prior settlement for the later TEFRA years and not covered by the TEFRA settlement procedures. See also Gridley v. Commissioner, T.C. Memo. 1997-210, in which we noted that the TEFRA settlement procedures did not apply to pre-TEFRA years.

In Fisher v. Commissioner, T.C. Memo. 1994-434, a duty on respondent to extend similar settlements was found to exist as to all taxpayers, but such duty was based not on any statutory requirements of TEFRA but on express contractual agreements that had been entered into by the taxpayers to be bound by results of subsequent test cases, and we concluded that a corresponding duty of disclosure was imposed on respondent to inform all taxpayers as to the outcome of the test cases. In Fisher, when some of the test cases were settled, other taxpayers in the group of related cases had a contractual right to be informed of the settlement and to settle their cases on the same basis. Fisher is distinguishable from the facts of the instant cases.

Absent proof that a taxpayer has been singled out for disparate treatment based on impermissible considerations such as race or religion, and absent contractual agreements to the contrary, respondent is not required to offer the same settlement terms to similarly situated taxpayers. Norfolk S. Corp. v.

<u>Commissioner</u>, 104 T.C. 13, 58-59, supplemented by 104 T.C. 417 (1995); <u>Davis v. Commissioner</u>, 65 T.C. 1014, 1022 (1976).

Petitioners argue that if all open years of a partnership (including pre- and post-TEFRA years) are not treated as governed by the TEFRA <u>settlement</u> procedures, certain accounting and financial statement difficulties arise. Even if true, petitioners have offered no authority to the effect that such accounting and financial statement difficulties would override the TEFRA statutory provisions that expressly provide that only partnership years beginning after September 3, 1982, are subject to the TEFRA partnership provisions.

Petitioners' allegations that a fraud has been committed on the Court are vague, confusing, and misdirected. Authority exists for setting aside a final decision of this Court based upon a fraud on the Court. See <u>Kenner v. Commissioner</u>, 387 F.2d 689, 691 (7th Cir. 1968); <u>Abatti v. Commissioner</u>, 86 T.C. 1319, 1323 (1986), affd. 859 F.2d 115 (9th Cir. 1988). But cf. <u>Harbold v. Commissioner</u>, 51 F.3d 618 (6th Cir. 1995). The cases, however, make it clear that such relief is very limited, as explained below:

> A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel, and must be supported by clear, unequivocal and convincing evidence. [<u>Landscape Properties, Inc. v. Vogel</u>, 46 F.3d 1416, 1422 (8th Cir. 1995) (quoting <u>In re</u>

Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 538 F.2d 180, 195 (8th Cir. 1974); citations omitted).]

See also Browning v. Navarro, 826 F.2d 335, 345 (5th Cir. 1987).

As suggested, the evidence and allegations that petitioners offer in support of their allegations of a fraud upon the Court are extremely vague and unsupported, and they call for little further discussion. We note that petitioners' counsel herein and petitioners' prior counsel represented many taxpayers who were involved in the Elektra Hemisphere tax shelters, and petitioners' former and/or present counsel likely have been aware, for many years, of all settlement positions that were made available by respondent.

Assuming, arguendo, that respondent's counsel -- in 1994 and later years after the Krause v. Commissioner, 99 T.C. 132 (1992), test case opinion was rendered -- did not specifically inform petitioners' counsel of all prior settlement positions that were available to investors in the Elektra Hemisphere tax shelters, there would be no basis for finding that a fraud has occurred on the Court. As explained above, TEFRA settlement procedures do not apply to these cases involving pre-TEFRA years, and there existed no obligation on respondent's counsel in these cases to inform all petitioners of each and every settlement position available to investors.

Lastly, we emphasize that the credible factual evidence submitted in connection with petitioners' motions establishes that petitioners and all other investors in the Elektra Hemisphere tax shelters were treated consistently by respondent and were given the same opportunity to settle their tax disputes with respondent on the same terms and with the same time deadlines.  The disposition of cases involved in the Elektra Hemisphere tax shelters followed specific time frames, and each different settlement position of respondent, which appears to have been adequately communicated to all investors in the Elektra Hemisphere tax shelters, was based on the "hazards of litigation" as perceived by respondent at a particular point in time.

In years after the Krause v. Commissioner, supra, test case opinion was filed, petitioners herein finally chose to agree to respondent's pending settlement offer, at which time the only available settlement position available to investors in the Elektra Hemisphere tax shelters was that which was accepted by petitioners and which was reflected in the decisions that were entered (namely, the no-cash settlements).

Petitioners' arguments and evidence fail to establish any "scheme of secrecy" regarding the availability of respondent's various settlement positions that were available to taxpayers who had invested in the Elektra Hemisphere tax shelters.

For the reasons stated, petitioners' motions for leave to file motions to vacate will be denied.

Appropriate orders will be issued.