T.C. Memo. 2008-39

UNITED STATES TAX COURT

RODOLFO LIZCANO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 211-03.                    Filed February 26, 2008.

R determined a deficiency in income tax for P's 1999 tax year based primarily on the disallowance of claimed business expenses.  R mailed to P a notice of deficiency that incorrectly provided the last day P could petition the Tax Court.  P claims that the notice of deficiency is invalid and alleges that the examination and audit were illegal and retaliatory.

<u>Held</u>:  The notice of deficiency is valid because P received the notice timely and petitioned the Tax Court timely.

<u>Held</u>, <u>further</u>, the examination and audit of P's 1999 Federal income tax return were in accordance with applicable law.

<u>Held</u>, <u>further</u>, R's deficiency determination is sustained.

Rodolfo Lizcano, pro se.

Roberta Shumway and Kelli H. Todd, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on respondent's motion for summary judgment.  The issues are:

(1) Whether the notice of deficiency is invalid because the date it specified as the last day on which petitioner could petition this Court was in error;

(2) whether the notice of deficiency is invalid because petitioner was improperly selected for examination and audit in retaliation for Equal Employment Opportunity Commission (EEOC) complaints and whistle blower reports he made while he was an employee of the Internal Revenue Service (IRS).

Unless otherwise indicated all section references are to the Internal Revenue Code of 1986, as amended for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Petitioner was employed by the IRS for approximately 20 years.  Petitioner claims that during his employment he was subjected to harassment and discrimination by his superiors and colleagues and witnessed his superiors and colleagues engaging in illegal activities.  Petitioner claims to have filed a complaint

with the EEOC in 1988 or 1989 on account of religious harassment and discrimination by IRS managers.  He also claims to have made whistle blower disclosures in 1996 regarding improprieties, including "fraud, waste, mismanagement and abuse by IRS managers and employees in Austin, TX".  Additionally, he asserts that he reported an IRS employee to IRS Inspection for interfering with an audit he was conducting in 1997.

On October 6, 1999, petitioner filed a formal equal employment opportunity (EEO) complaint, case No. TD-00-2004, alleging that his employer, the IRS, denied him the right to reasonable accommodation in violation of the Rehabilitation Act of 1973.  The Department of the Treasury, after its investigation, ruled against petitioner.[1]  Petitioner appealed, and the EEOC issued a decision, appeal No. 01A12073, on July 11, 2002, affirming the adverse decision of the Department of the Treasury.

On November 1, 2001, petitioner filed a formal EEO complaint, case No. TD-02-2036, for retaliation, discrimination, and harassment.  Additionally, on November 29, 2001, petitioner filed another formal EEO complaint, case No. TD-02-2066, alleging "illegal browsing of petitioner's 2000 tax account information,

---

[1]Federal employees who believe that they have been discriminated against by a Federal agency have a right to file an EEO complaint with that agency.  The employee may then appeal the agency's decision to the EEOC.

the illegal initiation of an audit on petitioner's 2000 tax return, and the illegal denial of petitioner's right to reasonable accommodation". These cases were both decided against petitioner by the Department of the Treasury.

Petitioner appealed both of these cases, and the EEOC issued a final decision, appeal No. 01A33800, on July 15, 2004. The EEOC affirmed the initial adverse rulings as to both of petitioner's complaints, concluding that petitioner was not subjected to a hostile work environment or denied reasonable accommodation for his disability, and that the allegation of discrimination due to the selection of petitioner's 2000 tax return for audit was rejected appropriately.

The notice of deficiency was mailed to petitioner on October 3, 2002. The notice determined an income tax deficiency of $3,959, based primarily on the disallowance of amounts petitioner claimed as business expense deductions, for petitioner's 1999 taxable year. The notice of deficiency, in error, listed January 2, 2002, as the last day to file a petition with this Court. On October 31, 2002, respondent mailed to petitioner a letter acknowledging the error and informing petitioner that the last day to file a petition with this Court was in fact January 2, 2003. Petitioner denies receipt of this letter.

Petitioner, who at that time resided in McAllen, Texas, filed timely a petition with this Court postmarked January 2, 2003.[2]  On February 20, 2003, respondent filed a motion to dismiss for failure to state a claim upon which relief can be granted.  In response, the Court issued an order instructing petitioner to file an amended petition, and informing both parties that a hearing would be held on respondent's motion.

Petitioner filed a motion for extension of the time to file his amended petition, which the Court granted.  Petitioner filed an amended petition on March 13, 2003, and filed a second amended petition on March 24, 2003.  All three of petitioner's petitions were devoid of any arguments regarding the dollar amount of the deficiency.[3]  They focused solely on petitioner's contentions

---

[2]Respondent mailed the notice of deficiency to petitioner on Oct. 3, 2002.  The 90th day thereafter was Wednesday, Jan. 1, 2003, which was a legal holiday in the District of Columbia.  See sec. 6213(a); Rule 25(b).  "When the last day prescribed under authority of the internal revenue laws for performing any act falls on * * * a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a * * * legal holiday."  Sec. 7503.

If a postage prepaid properly addressed petition is received by the Court after the expiration of the 90-day period, it is nevertheless deemed to be timely if the date of the U.S. Postal Service postmark stamped on the envelope in which the petition was mailed is within the time prescribed for filing. Sec. 7502(a); sec. 301.7502-1, Proced. & Admin. Regs.  Petitioner mailed his petition via the U.S. Postal Service, and it bears a postmark of Jan. 2, 2003.  Accordingly, the petition is deemed timely filed.  See sec. 7502(a).

[3]Petitioner did not assign error to respondent's deficiency
(continued...)

that the statutory notice of deficiency was invalid because of its faulty designation of January 2, 2002, as the last date for filing the petition and that respondent illegally conducted a retaliatory audit of his 1999 Federal income tax return on account of his EEOC complaints and whistle blowing.

A hearing on respondent's motion to dismiss was held on March 24, 2003, in San Antonio, Texas. At that time the Court denied respondent's motion. Thereafter, respondent filed an answer to the second amended petition.

On June 13, 2003, petitioner filed an original complaint in District Court in the McAllen Division of the Southern District of Texas. Petitioner's original complaint asserted various constitutional and statutory actions based upon his former employment with the IRS and named the United States of America, the United States Department of the Treasury, the IRS, and 17 individuals with whom he had worked or who had been involved with the audit of his 1999 Federal income tax return as defendants. Petitioner sought a trial by jury and damages for alleged violations of his civil rights. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

---

[3](...continued)
determination in his petition, amended petition, or second amended petition. Each issue not addressed by a clear and concise assignment of error in the petition is deemed to be conceded. Rule 34(b)(4). Accordingly, petitioner is deemed to have conceded the correctness of respondent's deficiency determination.

Petitioner's original complaint, on September 12, 2003, was sua sponte ordered transferred to the Austin Division of the Western District of Texas (District Court), where it was filed on September 23, 2003. <u>Lizcano v. United States</u>, No. A-03-CA-661-SS (D. Tex. Dec. 14, 2004).

On December 4, 2003, respondent filed a motion for continuance of the then-scheduled Tax Court trial because "The common issue before this Court and the District Court will necessitate that the same evidence be introduced in each case." The Tax Court ordered petitioner to file a response. On December 24, 2003, petitioner filed a response indicating no objection to respondent's motion. On December 30, 2003, the Tax Court granted respondent's motion for continuance.

On December 23, 2003, the District Court defendants filed motions to dismiss, and on March 8, 2004, that court dismissed all causes of action against the individual defendants and granted petitioner leave to file an amended complaint with respect to his <u>Bivens</u>, and section 7431 or Privacy Act, claims.[4]

---

[4]The District Court concluded that the suit against the individually named defendants "in their official capacities" was precluded by sovereign immunity, and that there was "no private cause of action against an employee under the Family Medical Leave Act" or "Whistleblower Act as applicable to federal employees". No claims were alleged by petitioner under the Federal Tort Claims Act and the District Court found that "his attempted <u>Bivens</u> pleadings * * * [were] also defective" because they did not contain a "specific allegation of any constitutional right violation".

Petitioner, on April 22, 2004, filed his <u>Bivens</u> action amended complaint, in which he named as defendants nine individuals with whom he had worked or who had been involved with the audit of his 1999 Federal income tax return.[5]  The amended complaint alleged violations of sections 6103 and 7605 and his civil rights.

On December 14, 2004, the District Court issued an order and a judgment dismissing petitioner's case.  It concluded that, for summary judgment purposes, while petitioner had sufficiently alleged violations of his constitutional rights by defendants in

---

[5]Petitioner's amended complaint did not list the United States, the Department of the Treasury, or the IRS as a defendant.  In n.1 in the Appendix To Individual Defendant's Dispositive Motion, filed with the District Court, the nine named individual defendants argued that

> by operation of Lizcano's amended complaint, the Treasury Department has been dismissed from this action.  6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1476 (2d ed. 1990) (reasoning that an amended pleading supersedes the original, *i.e.*, the original is of no legal effect); <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994) (same); see also <u>Campbell v. Hoffman</u>, 151 F.R.D. 682, 684 (D. Kan. 1993) (holding that the plaintiff's amended complaint effected the dismissal of one of the defendants from the lawsuit); 8 MOORE'S FEDERAL PRACTICE ¶ 41.21[2] (3d ed. 2002) (reasoning that an amended complaint is the appropriate mechanism for eliminating an issue, or one or more but less than all of several claims).

This Court notes that the District Court's order dismissing petitioner's case, as well as its judgment, both discussed <u>infra</u>, included the United States, the Department of the Treasury, and the IRS as defendants in the caption.

initiating the audit, he had failed to prove those charges. Further, the defendants had with "competent summary judgment evidence" established that "none of them were responsible for the initiation of his federal income tax examination" and that his return was selected for audit by computer and not as a retaliatory action. The order states: "Plaintiff's own evidence supports Defendants' claims of non-involvement in the selection of his audit." The District Court completely dismissed petitioner's suit, including the Bivens claim. The District Court's judgment stated: "IT IS ORDERED, ADJUDGED, and DECREED that Plaintiff Rodolfo Lizcano TAKE NOTHING against Defendants the United States of America, the Internal Revenue Service, the Department of the Treasury", and the named individual defendants.

On February 7, 2005, respondent filed with this Court a motion for continuance of trial to provide time for petitioner to appeal the District Court case. This Court granted respondent's motion. On August 11, 2005, respondent filed a motion for summary judgment. The Tax Court, by order dated August 22, 2005, ordered petitioner to file any response on or before September 30, 2005. To date, the Tax Court has not received a response.

The Tax Court, by order dated November 25, 2005, informed both parties that a hearing on respondent's motion for summary judgment was scheduled for a time and date certain of

January 10, 2006, at 9 a.m. in San Antonio, Texas, in a designated courtroom in order to precede the scheduled trial of the case that week. Petitioner failed to make an appearance at the hearing.

OPINION

I. Jurisdiction

There are two prerequisites to this Court's jurisdiction to redetermine a deficiency: (1) The issuance of a valid notice of deficiency by the Commissioner, and (2) the timely filing of a petition with the Court by the taxpayer. See Rule 13(a), (c); Rochelle v. Commissioner, 116 T.C. 356, 358 (2001) (and cases cited thereat), affd. 293 F.3d 740 (5th Cir. 2002).

Validity of Notice of Deficiency

Petitioner contends that the notice of deficiency is invalid because it lists incorrectly the last date on which petitioner could file a timely petition with this Court. Petitioner relies on section 6213(a) and the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA), Pub. L. 105-206, sec. 3463(a), 112 Stat. 767, for his argument that the notice of deficiency is invalid.

Pursuant to section 6213(a), a taxpayer has 90 days (or 150 days if the notice is addressed to a person outside the United States) from the date that the notice of deficiency is mailed to

file a petition with this Court for a redetermination of the
contested deficiency.  RRA section 3463(a) provides as follows:

> (a) In General.--The Secretary of the Treasury or the
> Secretary's delegate shall include on each notice of
> deficiency under section 6212 of the Internal Revenue
> Code of 1986 the date determined by such Secretary (or
> delegate) as the last day on which the taxpayer may
> file a petition with the Tax Court.
>
> (b) Later Filing Deadlines Specified on Notice of
> Deficiency To Be Binding.--Subsection (a) of section
> 6213 (relating to restrictions applicable to
> deficiencies; petition to Tax Court) is amended by
> adding at the end the following new sentence: "Any
> petition filed with the Tax Court on or before the last
> date specified for filing such petition by the
> Secretary in the notice of deficiency shall be treated
> as timely filed".
>
> (c) Effective Date.--Subsection (a) and the amendment
> made by subsection (b) shall apply to notices mailed
> after December 31, 1998.

Section 6212(a) provides that if the Commissioner determines
a deficiency in income tax, "he is authorized to send notice of
such deficiency to the taxpayer by certified mail or registered
mail."  "The purpose of this provision is to provide the taxpayer
with actual notice of the deficiency in a timely manner, so that
the taxpayer will have an opportunity to seek a redetermination
of such deficiency in the prepayment forum offered by this
Court."  Rochelle v. Commissioner, supra at 359-360; see Smith v.
Commissioner, 114 T.C. 489, 490-491 (2000), affd. 275 F.3d 912
(10th Cir. 2001); McKay v. Commissioner, 89 T.C. 1063, 1067
(1987), affd. 886 F.2d 1237 (9th Cir. 1989).  Accordingly, this
Court has held that where the Commissioner fails to provide the

petition date on the notice of deficiency but the taxpayer nonetheless receives the notice and files a timely petition, the notice is valid. Smith v. Commissioner, supra at 492.

Petitioner received the notice of deficiency and filed a timely petition with this Court. Although the notice of deficiency stated incorrectly the last date on which petitioner could petition this Court, it clearly and conspicuously stated that a petition must be filed with this Court within 90 days of the date the notice of deficiency was mailed. Furthermore, respondent mailed a letter to petitioner on October 31, 2002, acknowledging the error in the notice of deficiency and informing petitioner that he had until January 2, 2003, to file a petition with this Court. Accordingly, the statutory goal of providing the taxpayer with actual notice of the deficiency determination in a timely manner was satisfied. The Court concludes that the notice of deficiency is valid and this Court has jurisdiction.

II.  Availability of a Bivens Remedy

"Bivens provides that federal courts have the inherent authority to award damages against federal officials to compensate plaintiffs for violations of their constitutional rights. * * * However, Bivens remedies are not available to compensate plaintiffs for all constitutional torts committed by federal officials." W. Ctr. for Journalism v. Cederquist, 235 F.3d 1153, 1156 (9th Cir. 2000). There are three recognized

circumstances in which a <u>Bivens</u> remedy is unavailable:
(1) "Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur" in the course of administering a Federal program,[6] (2) there are "special factors counselling hesitation in the absence of affirmative action by Congress"[7] that indicate that congressional inaction has not been inadvertent, and (3) Congress has specifically foreclosed such relief (and courts cannot judicially create a remedy).[8]  <u>Id.</u> at 1156 n.3.

The third circumstance is applicable to the instant case as the Anti-Injunction Act, section 7421(a), prohibits suits to restrain the assessment or collection of taxes.[9]  The first circumstance is also pertinent as Congress has given taxpayers the right to sue for a refund.  Sec. 7422.  Additionally,

---

[6]<u>Schweiker v. Chilicky</u>, 487 U.S. 412, 423 (1988); see the Court of Appeals for the Fifth Circuit's decision in <u>Baddour, Inc. v. United States</u>, 802 F.2d 801, 807-808 (5th Cir. 1986), the court to which an appeal in this case would normally lie absent a stipulation to an appeal elsewhere; see also <u>Natl. Commodity and Barter Ass'n v. Archer</u>, 31 F.3d 1521, 1532 (10th Cir. 1994); <u>Wages v. IRS</u>, 915 F.2d 1230, 1235 (9th Cir. 1990); <u>Cameron v. IRS</u>, 773 F.2d 126, 129 (7th Cir. 1985).

[7]<u>Carlson v. Green</u>, 446 U.S. 14, 18 (1980); see <u>Chappell v. Wallace</u>, 462 U.S. 296 (1983).

[8]See <u>Carlson v. Green</u>, <u>supra</u> at 18-19.

[9]Sec. 6330(e)(1) overrides the Anti-Injunction Act and permits proceedings in the proper court, including this Court, to enjoin the beginning of a levy during the period the levy action is suspended.  See <u>Boyd v. Commissioner</u>, 124 T.C. 296, 299 (2005).

Congress has given taxpayers the right to bring a civil action for damages and has established criminal sanctions for Federal officers or employees who infringe upon a taxpayer's rights. See sections 6103, 7213, 7213A, and 7431, discussed infra.

III. Anti-Injunction Act

In Bob Jones Univ. v. Simon, 416 U.S. 725, 736 (1974), the court stated the purpose of the Anti-Injunction Act as follows:

> The Anti-Injunction Act apparently has no recorded legislative history, but its language could scarcely be more explicit - 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court * * *'[.] The Court has interpreted the principal purpose of this language to be the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" [Citations omitted.]

It is evident that the primary purpose of petitioner's case is to prevent the assessment and collection of taxes for his 1999 taxable year. Congress has given taxpayers "the right to sue the government for a refund if forced to overpay taxes, and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against Treasury employees." Cameron v. IRS, 773 F.2d 126, 129 (7th Cir. 1985). "There are sound reasons not to subject the taxing system to an extra-statutory measure of damages without express Congressional authority." Baddour, Inc.

v. United States, supra at 809.  The Anti-Injunction Act expressly bars petitioner's action.[10]

Furthermore, the Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits are all in agreement that "Bivens relief is not available for alleged constitutional violations by IRS officials involved in the process of assessing and collecting taxes". Adams v. Johnson, 355 F.3d 1179, 1184 (9th Cir. 2004); see Hudson Valley Black Press v. IRS, 409 F.3d 106, 113 (2d Cir. 2005); Judicial Watch, Inc. v. Rossotti, 317 F.3d 401, 413 (4th Cir. 2003); Shreiber v. Mastrogiovanni, 214 F.3d 148, 155 (3d Cir. 2000); Dahn v. United States, 127 F.3d 1249, 1254 (10th Cir. 1997); Fishburn v. Brown, 125 F.3d 979, 982-983 (6th Cir. 1997); Vennes v. An Unknown Number of Unidentified Agents of the United States, 26 F.3d 1448, 1453-1454 (8th Cir. 1994); McMillen v. United States Department of Treasury, 960 F.2d 187, 190 (1st Cir. 1991); Baddour, Inc. v. United States, supra at 807-809; Cameron v. IRS, supra at 129.  This Court will not judicially create a remedy for petitioner.

---

[10]None of the exceptions to the Anti-Injunction Act is applicable to the instant case.  Sec. 7421(a) provides:  "Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6225(b), 6246(b), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person".

IV.  Respondent's Motion for Summary Judgment

     A. General Rules

     Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  A party is allowed to move "for a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy." Rule 121(a).  A decision on the motion shall be "rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b).

     The moving party bears the burden of proving that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). Facts and inferences drawn from the record are viewed in the light most favorable to the nonmoving party. Id. Where the moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading," but must, by affidavits or otherwise, set forth "specific facts showing that there is a genuine issue for trial."  Rule 121(d).

B. <u>Unlawful Audit</u>

Petitioner relies on sections 6103 and 7213 for his claim that the audit and examination of his 1999 Federal income tax return was improper. Section 6103 protects the privacy of taxpayers and restricts Government officers and employees from disclosing confidential return information. In support of the restrictions imposed by section 6103, sections 7213 and 7213A make unlawful the unauthorized disclosure of return information and the unauthorized inspection of returns or return information, respectively.

Section 7213 makes it unlawful for any officer or employee of the United States, or any person described in section 6103(n) (or an officer or employee of any such person), or any former officer or employee, to willfully disclose, except as otherwise authorized by law, any tax return or return information as defined in section 6103(b). The penalty for this felony is a fine of not more than $5,000 or imprisonment for not more than 5 years, or both. Additionally, section 7431 imposes civil damages for the unauthorized inspection or disclosure of returns and return information.[11]

---

[11]A taxpayer may bring a civil action for damages in a U.S. District Court. Sec. 7431(a)(1). The damages are the greater of (1) $1,000 for each unauthorized inspection or disclosure of a return or return information, or (2) the sum of the actual damages sustained by the taxpayer as a result of such unauthorized inspection or disclosure, plus, in the case of a
(continued...)

Section 7213A, Unauthorized Inspection of Returns or Return Information, was enacted in 1997 by the Taxpayer Browsing Protection Act, Pub. L. 105-35, section 2(a), 111 Stat. 1104 (1997), to address unauthorized scanning of tax returns and return information primarily by tax enforcement personnel. Section 7213A provides:

SEC. 7213A(a). Prohibitions.--

(1) Federal employees and other persons.--It shall be unlawful for--

(A) any officer or employee of the United States, or

(B) any person described in section 6103(n) or an officer or employee of any such person,

willfully to inspect, except as authorized in this title, any return or return information.

For purposes of section 7213A, "inspect" means "any examination of a return or return information." Secs. 7213A(c), 6103(b)(7). Violation of section 7213A can result in a fine not exceeding $1,000, or imprisonment not exceeding 1 year, or both, as well as dismissal from Federal employment. Sec. 7213A(b)(1) and (2).

---

[11](...continued) willful inspection or disclosure, or an inspection or disclosure that is the result of gross negligence, punitive damages. Sec. 7431(c)(1). In addition to the damages as determined by sec. 7431(c)(1), the taxpayer is entitled to the cost of the action. Sec. 7431(c)(2). The taxpayer may also be able to recover attorney's fees. See secs. 7431(c)(3) and 7430.

As a general rule, this Court will not look behind a notice of deficiency. It does not usually examine the evidence used or the propriety of the Commissioner's motives, policy, or procedures in making audit determinations. See Riland v. Commissioner, 79 T.C. 185, 201 (1982); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974); Human Engg. Institute v. Commissioner, 61 T.C. 61, 66 (1973); Suarez v. Commissioner, 58 T.C. 792, 814 (1972), overruled in part Guzzetta v. Commissioner, 78 T.C. 173 (1982). However, this Court has recognized an exception to the rule when there is substantial evidence of unconstitutional conduct on the Commissioner's part and the integrity of the judicial process would be impugned if the Court permitted the Commissioner to benefit from his conduct. Suarez v. Commissioner, supra; see Greenberg's Express, Inc. v. Commissioner, supra. But even in these limited situations, this Court has refused to hold the notice of deficiency null and void. Human Engg. Institute v. Commissioner, supra; Suarez v. Commissioner, supra; see Greenberg's Express, Inc. v. Commissioner, supra.

C. Collateral Estoppel

Respondent contends that collateral estoppel, also known as issue preclusion, precludes petitioner from relitigating the issue of whether his 1999 Federal income tax return was illegally selected for audit. Respondent notes that the District Court has

held that petitioner's income tax return was selected for audit by computer.

Collateral estoppel exists for the "dual purpose of protecting litigants from the burden of relitigating an identical issue and of promoting judicial economy by preventing unnecessary or redundant litigation."  Meier v. Commissioner, 91 T.C. 273, 282 (1988); see also Montana v. United States, 440 U.S. 147, 153-154 (1979); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979).  In general, the doctrine of collateral estoppel forecloses relitigation of issues actually litigated and necessarily decided in a prior suit.  Parklane Hosiery Co. v. Shore, supra at 326 n.5; Meier v. Commissioner, supra at 282; Peck v. Commissioner, 90 T.C. 162, 166 (1988), affd. 904 F.2d 525 (9th Cir. 1990).

This Court, expanding upon three factors identified by the Supreme Court in Montana v. United States, supra at 155, has set forth five prerequisites necessary for the application in factual contexts of collateral estoppel:

> (1) The issue in the second suit must be identical in all respects with the one decided in the first suit.
> (2) There must be a final judgment rendered by a court of competent jurisdiction.
> (3) Collateral estoppel may be invoked against parties and their privies to the prior judgment.
> (4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision.
> (5) The controlling facts and applicable legal rules must remain unchanged from those in the prior

litigation. [Peck v. Commissioner, supra at 166-167 (citations omitted).]

1. Identity of Issues

The first of the five factors enumerated above focuses on identity of the issues. The Court must determine whether the facts and issues upon which the earlier judgment was rendered are applicable to the instant case. See Gammill v. Commissioner, 62 T.C. 607, 616 (1974). The question before the District Court in the proceeding between petitioner and the nine named individuals was: (1) Whether the named individuals "either participated in the decision to initiate audits of [his] tax returns or in the actual audit process itself" in violation of sections 6103(a) and 7605(b),[12] and (2) whether petitioner's constitutional rights, specifically his First Amendment right to free speech, his Fourth Amendment liberty interests, his Fifth Amendment right to procedural and substantive due process and equal protection, and his right to be free of cruel and unusual punishment, were violated.

---

[12]Sec. 7605(b) provides:

    SEC. 7605(b). Restrictions on Examination of Taxpayer.--No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

In probing the existence of the alleged violations, the District Court made specific findings of fact and conclusions with respect to the selection of petitioner's 1999 Federal income tax return for audit. The District Court found that none of the named individual defendants was responsible for the selection of petitioner's 1999 Federal income tax return for audit because his tax return was selected by computer. The District Court's findings addressed precisely the same issue that is now before this Court: the selection of petitioner's 1999 Federal income tax return for audit. Accordingly, identity of issues poses no barrier to the application of collateral estoppel.

2. <u>Final Judgment by Court of Competent Jurisdiction</u>

The second pertinent factor is phrased in terms of a final judgment by a court of competent jurisdiction. There is no question that the District Court is a court of competent jurisdiction and that it reached a final judgment in the subject case. This prerequisite also poses no barrier to the application of collateral estoppel.

3. <u>Privity</u>

The third point typically considered by this Court in assessing the propriety of collateral estoppel is that the doctrine may be invoked against parties and their privies to the prior judgment. <u>Peck v. Commissioner</u>, <u>supra</u> at 166. Historically, courts often went further than this formulation in

restricting the rule's use. As explained by the U.S. Supreme Court in 1979: "Until relatively recently, however, the scope of collateral estoppel was limited by the doctrine of mutuality of parties. Under this mutuality doctrine, neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment." Parklane Hosiery Co. v. Shore, supra at 326-327. The Supreme Court has now abandoned the requirement of mutuality and sanctioned both offensive and defensive use of nonmutual collateral estoppel. See, e.g., United States v. Mendoza, 464 U.S. 154, 158-159 (1984); Parklane Hosiery Co. v. Shore, supra at 327-329, 331.

Offensive use "occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party", while use in the defensive sense "occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." Parklane Hosiery Co. v. Shore, supra at 326 n.4. This Court likewise no longer insists upon strict mutuality.[13]

Respondent seeks to assert collateral estoppel against petitioner, which is defensive collateral estoppel. "Privity in

---

[13]However, there is a caveat: where collateral estoppel premised on a State proceeding is sought to be used offensively in Federal Court, reference is made to the controlling State law to determine the propriety of such offensive use. Bertoli v. Commissioner, 103 T.C. 501, 508 (1994).

the sense of 'identity of interests' has been broadly construed and applied. * * * Privity between the United States and the Commissioner of Internal Revenue is also recognized by this Court." Gammill v. Commissioner, supra at 614. Similarly, Government officials or employees who are sued in their official capacities are generally considered to be in privity with the Government or their governmental agencies. Bloomquist v. Brady, 894 F. Supp. 108, 114 (W.D.N.Y. 1995) (Secretary of the Treasury was in privity with the United States); see Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988); Thurston v. United States, 810 F.2d 438, 444 (4th Cir. 1987); Town of Seabrook v. New Hampshire, 738 F.2d 10, 11 (1st Cir. 1984).

Respondent is permitted to use collateral estoppel in the defensive sense because petitioner's case in the District Court was against respondent, at least initially, and named individual employees of respondent. The fact that petitioner did not include respondent as a defendant in his District Court amended complaint does not bar the application of collateral estoppel because respondent has privity with its employees. See supra note 7. Furthermore, the captions of the order and judgment of the District Court include respondent, and the judgment specifically provides: "IT IS ORDERED, ADJUDGED, and DECREED that Plaintiff Rodolfo Lizcano TAKE NOTHING against Defendants the United States of America, the Internal Revenue Service, the

Department of the Treasury".  There is an obvious "identity of interests" where nine of respondent's employees, as well as respondent (at least initially), were defendants in petitioner's District Court case, and respondent is now the defendant in the instant case.  Accordingly, privity poses no barrier to the application of collateral estoppel.

4. Issues Actually Litigated and Essential

The fourth factor is that the issues in question have been actually litigated and essential to the result in the prior proceeding.  Peck v. Commissioner, supra at 167.  The District Court stated:  "Lizcano has also alleged the sole motivation underlying the audit of his tax returns was to retaliate against his constitutionally protected right to complain of illegal and discriminatory actions by other IRS employees."  The District Court concluded that while petitioner had sufficiently alleged violations of his constitutional rights by defendants in initiating the audit, he failed to prove that any of the named defendants initiated or were involved in the selection of his tax return for examination.  Instead, the District Court found that the selection of his 1999 Federal income tax return for audit had been done by computer.[14]  Petitioner again alleges that his 1999

---

[14]There has been no allegation nor fact alleged that the computer's selection was done in other than a neutral way based on the IRS's standard matching and/or Discriminatory Income Function (DIF) software used to score tax returns for their

(continued...)

Federal tax return was improperly selected for audit in retaliation for his EEOC complaints and whistle blowing.  Thus, petitioner seeks to relitigate the identical issue necessarily decided in his District Court case.  This factor poses no obstacle to the application of collateral estoppel.

    5. Change in Circumstances

    The fifth consideration for collateral estoppel is whether there has been a change in the controlling facts or legal rules since the earlier ruling.  Id.  The type of changes with which this factor is concerned are factual changes stemming from subsequent events and legal changes wrought by intervening judicial decisions, statutory provisions, or regulatory promulgations.  Sunnen v. Commissioner, 333 U.S. 591, 599-601 (1948).  Respondent seeks to apply collateral estoppel to the same facts considered by the District Court.  Petitioner has not brought to the Tax Court's attention, nor is this Court aware of, any relevant changes in the applicable law via judicial decisions, statutory provisions, or regulatory promulgations that have occurred since the District Court dismissed petitioner's case on December 14, 2004.  Accordingly, change in circumstances also poses no bar to the application of collateral estoppel.

_____

    [14](...continued)
probability of error and applied even handedly to all individual income tax returns.  The DIF scoring system was developed by using the results of random audits historically known as the Taxpayer Compliance Movement Program or by its acronym TCMP.

6. <u>Conclusion</u>

The Court concludes that collateral estoppel bars petitioner from relitigating the issue of whether his 1999 Federal income tax return was improperly selected for audit in violation of sections 6103 and 7605(b) and petitioner's constitutional rights. The District Court previously found that petitioner's 1999 Federal income tax return was selected for audit by computer and not in retaliation for his complaints against his coworkers or his job performance.

Petitioner also alleges that respondent violated section 7213, an issue which he did not raise in his District Court case. However, pursuant to the judicial doctrine of collateral estoppel, "the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" <u>Commissioner v. Sunnen</u>, <u>supra</u> at 597 (quoting <u>Cromwell v. County of Sac</u>, 94 U.S. 351, 352 (1877)). Accordingly, the Court will grant respondent's motion for summary judgment.

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

An appropriate order and decision will be entered for respondent.